No. 27686

**Lorene Hyde v. The Industrial Commission of the State of Colorado and University of Colorado, Employer**
No. 27704
**George Weber v. The Industrial Commission of the State of Colorado and University of Colorado, Employer**

(576 P.2d 541)

Decided February 27, 1978.

William Redak, Jr., for petitioner, No. 27686.

George Weber, pro se, No. 27704.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Joel W. Cantrick, Assistant, for respondents.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

We announced an opinion in these two cases on December 19, 1977. Upon petition for rehearing from petitioner Hyde we withdrew the opinion, stating that we would reconsider the matter after lodging of a complete record of proceedings before the Industrial Commission and its referee. It now appears that the complete record has been before us and was considered by us at all times. This opinion, with some additions and minor modification, reaches the same result as the original opinion.

The petitioners sought review by the Colorado Court of Appeals of denial of unemployment compensation by the Industrial Commission, after cessation of employment as instructors at the University of Colorado. As the constitutionality of a statute was raised, we accepted jurisdiction from the court of appeals. Since the issues are identical in each case and the facts are functionally equivalent, we have consolidated the cases. We affirm the orders of the Industrial Commission.

The petitioner Weber appeared *pro se*, filed no separate briefs, adopted the briefs of Hyde and made no oral argument.

Weber was enrolled at the University and was pursuing a course of study leading to a masters degree. During the fall semester he was enrolled in "Geography 700, Masters Thesis." During the spring semester he was enrolled as a "Candidate for Degree." It appears that his scholarly endeavors during these two semesters consisted of preparing a thesis under the occasional guidance of a regular faculty member. Contingent upon his enrollment, Weber was employed by the University on a part-time basis as a teaching assistant.

Due in large part to the failure of Hyde to appear at the referee's hearing in her case, it is difficult to determine precisely what her academic status was during the period in question. It is undisputed that she was enrolled as a graduate student at the University of Colorado. Contingent upon this enrollment, she was employed by the University on a part-time basis as a teaching associate. It appears to be a fair assumption that as a function of her enrollment during this period it was expected that, in pursuit of her course of study, she was engaging in independent study for her comprehensive exams.

After the petitioners were no longer employed as teachers, each applied for unemployment compensation. A deputy adjudicator found that each was no longer a student and, therefore, no teaching position was available. In each case, the deputy held that under section 8-73-108(4)(a), C.R.S. 1973 (lack of work), the petitioners were entitled to a full award.

The University of Colorado appealed the deputy decisions. A referee reversed the deputy decisions and ruled that by reason of section 8-70-103(11)(g), C.R.S. 1973, each petitioner was ineligible for the receipt of benefits. The Industrial Commission of the State of Colorado affirmed the decisions of the referee.

We first consider the contention of the petitioners that the Industrial Commission erred in holding that section 8-70-103(11)(g), C.R.S. 1973 applied to them. That section provides as follows:

"(11) 'Employment' does not include:

. . .

"(g) Service performed in the employ of a school, college, or university, if such service is performed:

"(I) By a student who is enrolled and is regularly attending classes at such school, college, or university . . . ."

Petitioners' claim is that, as they were not "regularly attending classes," they should not be disqualified by this section.

■ It is undisputed that both petitioners were enrolled. Thus, the question is whether Weber's thesis preparation constituted "regularly attending classes" within the meaning of the statute. We believe that it does. The General Assembly's intent was not to limit this disqualification simply to employees who are regularly attending formal, structured classes; rather, its intent was to embrace all persons who are essentially students. The ongoing intellectual endeavor of thesis preparation comes within the legislative intent.

In the same vein, we also find that Hyde's preparation for comprehensive exams constitutes this type of ongoing intellectual endeavor.

■ We next consider the petitioners' claim that subsection 103 (11)(g), on its face, and as applied, is violative of equal protection. The petitioners concede that the strict scrutiny test need not be applied since no "fundamental right" or "suspect classification" is involved. *See Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977); *Kistler v. Industrial Commission*, 192 Colo. 172, 556 P.2d 895 (1976); *Johnson v. Division of Employment*, 191 Colo. 38, 550 P.2d 334 (1976); *Olson v. Public Service Co.*, 190 Colo. 512, 549 P.2d 780 (1976); *Stevenson v. Industrial Commission*, 190 Colo. 234, 545 P.2d 712 (1976). They do assert, however, that the statute lacks a rational basis in that it fails to foster a legitimate state interest. We disagree.

There are numerous conceivable rational justifications for the exclusion of students from the coverage of the Act. For example, if the services of such persons were not excluded from the definition of "employment," the University would be required to make contributions to the unemployment compensation fund, section 8-77-101, C.R.S. 1973, pursuant to the requirements of sections 8-76-101 *et seq.*, C.R.S. 1973.

We quote with approval from the respondent's answer brief:

"Moreover, the legislature undoubtedly recognized that a primary purpose of the teaching assistant program is to provide graduate students not only with financial assistance but also with teaching experience. The present program permits a graduate student to enter into a fairly short-term teaching assistant contract while he or she completes a degree. The program thus provides a number of persons with some assistance and experience and at the same time encourages a graduate student to complete his or her degree programs within the term of his contract. If the University were required to pay unemployment contributions for such persons, the University would likely restructure the program to provide a few individuals with longer-term contracts (in order to minimize their costs in connection with the unemployment compensation program) rather than spreading the appropriation among more numerous, shorter-term contracts. Such a restructuring therefore would have the undesirable effect of depriving some graduate students of financial aid and teaching experience and would eliminate the present incentives for early completion of the degree program."

There are numerous other rational justifications, but it is unnecessary for us to outline them here. We regard the justification already outlined as adequate. *See generally, Ohio Bureau of Employment Services v. Hodory, supra; Miller v. Industrial Commission*, 173 Colo. 476, 480 P.2d 565 (1971).

We also find no merit in the contention of Hyde that the commission abused its discretion by altering its interpretation of the statute after the date on which the petitioner filed her claim.

Orders affirmed.

MR. JUSTICE CARRIGAN does not participate.