## No. 28155

**Mary H. Herrera v. Industrial Commission for the State of Colorado (ex-officio Unemployment Compensation Commission of Colorado) and the Denver Public School Administration**

(593 P.2d 329)

Decided January 22, 1979.

Frederick P. Charleston, for petitioner.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Ann Sayvetz, Assistant, for respondents.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

Petitioner Mary H. Herrera appeals from an order of the Industrial Commission denying her claim for unemployment compensation benefits. We affirm.

Mary Herrera has been employed as a food service worker by the Denver Public Schools (DPS). In 1976, she was laid off during the summer vacation and applied for and received unemployment compensation benefits. She returned to work for DPS in the fall and was again laid off during the summer of 1977. She again applied for unemployment benefits for the time she expected to be out of work. However, an amendment in the federal law under which she applied became effective October 20, 1976. The benefits were denied. Herrera requested a hearing. After listening to her testimony, the referee determined that Herrera was, due to the amendment, excluded from coverage and not entitled to compensation.

The Industrial Commission affirmed the referee's decision.

## I.

■ The referee based his decision on the 1976 amendment to the Emergency Jobs and Unemployment Assistance Act of 1974, P.L. 93-567, 88 Stat. 1845 (hereafter "the Act").[1] The amendment, P.L. 94-566, 90 Stat. 2691, declares nonprofessional school employees ineligible for Special Unemployment Assistance (SUA) benefits between school terms when "reasonable assurances" are given that they will be rehired when the next school term begins.[2] The referee specifically found that Herrera intended to return to work and that she had not been given any notification by her employer that she would not be rehired in the fall. He concluded she had a "reasonable assurance" that she would be called back to work in the fall.

Herrera asserts she did not receive the necessary assurance. Her employer never appeared at the hearing, and the only evidence in the record of intent to rehire consisted of a signed form from Herrera's employer, stating an intent to rehire her "depending on continued need." Herrera states this is insufficient. We disagree.

■ The legislative history of the amendment in question reveals that "reasonable assurance" was intended to mean "a written, verbal, or implied agreement that the employee will perform services in the same capacity during the ensuing academic year or term." [1976] U.S. Code Cong. & Ad. News 6036. Inasmuch as Herrera was a non-tenured employee, she could only expect to work for DPS during the fall term if the schools had "continuing need" for her services. The affirmative answer to the query, "Do you intend to reemploy [Herrera]?," combined with Herrera's expressed intent to work for DPS, clearly implied an agreement between employer and employee for the employee's continued performance as a food services worker.

---

[1] The Act and its amendments are set forth in a series of notes following 26 U.S.C., § 3304. Section numbers referred to will be those of Title II of the 1974 Act.

[2] "SEC. 603. DENIAL OF SPECIAL UNEMPLOYMENT ASSISTANCE TO NONPROFESSIONAL EMPLOYEES OF EDUCATIONAL INSTITUTIONS DURING PERIODS BETWEEN ACADEMIC TERMS.

"(a) Section 203 of the Emergency Jobs and Unemployment Assistance Act of 1974 is amended by adding at the end thereof the following new subsection:

'(c) An individual who performs services for an educational institution or agency in a capacity (other than an instructional, research, or principal administrative capacity) shall not be eligible to receive a payment of assistance or a waiting period credit with respect to any week commencing during a period between two successive academic years or terms if —

'(1) such individual performed such services for any educational institution or agency in the first of such academic years or terms; and

'(2) there is a reasonable assurance that such individual will perform services for any educational institution or agency in any capacity (other than an instructional, research, or principal administrative capacity) in the second of such academic years or terms.'"

■ At the hearing, Herrera stated DPS would inform her by letter, late in the summer, if they wished her to return. Should Herrera have become unemployed in fact, she would have then become eligible for benefits from the time her unemployment actually began.[3] Until the time unemployment became a certainty, however, Herrera's statement and the employer's expressed intent to rehire her constituted a sufficient factual basis for the referee's decision that she was excluded from SUA coverage.

## II.

Herrera also alleges the SUA program is contrary to state unemployment laws. Her allegation carries no weight in this case. The state and federal programs are complementary, designed to cover different situations.[4] The claimant filed for benefits under federal law because she was ineligible under the Colorado Employment Security Act. *See* section 8-70-103(11)(f), C.R.S. 1973, and section 8-70-103(19.5), C.R.S. 1973 (1976 Supp.).

■ She then asserts the administration of the SUA program unconstitutionally distinguishes nonprofessional school employees from other classes of seasonally employed persons. She fails to demonstrate that the class to which she belongs (nonprofessional school employees) is protected, or that the Act impinges on a fundamental interest. Thus, our inquiry is confined to determining whether the Act as amended and applied has a rational relation to a legitimate governmental interest. *See Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977); *Hyde v. Industrial Commission,* 195 Colo. 67, 576 P.2d 541 (1978). We hold that the rational relation exists, and thus find no violation of the petitioner's rights.

The purpose of the SUA program is to provide benefits for workers during *aggravated* periods of unemployment. The Act, § 201. The declaration of legislative intent was examined and amplified by Judge Flaum in *Chicago Teachers U., Local No. 1, AFT/AFL/CIO v. Johnson,* 421 F. Supp. 1261 (N.D. Ill. 1976):

"The very nature of the compensation scheme, its extended duration and integral relation to prevailing economic factors, anticipates sustaining an unemployed worker during the search for re-employment in a locale marked by chronic unemployment and a depressed job market."

Since available legislative history supports this interpretation, we accept and adopt Judge Flaum's statement for purposes of this opinion.

The court in *Chicago Teachers, supra,* interpreted a 1975 amendment to the Act which provides that persons performing services for

---

[3] [1976] U.S. Code Cong. & Ad. News 6036. *See* Unemployment Insurance Program Letter No. 21-77, page 5 (February 28, 1977).

[4] Thus, § 207 of the Act provides that the terms and conditions of state unemployment compensation law apply to claims under the Act *except* when they are inconsistent with the SUA provisions.

educational institutions in "instructional, research, or principal adminis-trative capacity" should not receive unemployment benefits during the gap between school terms.[5] The court interpreted the legislative history of the amendment to reflect "an underlying assumption that teachers with con-tracts for the term prior to the summer hiatus and for the term following it are not in fact unemployed." We agree, and find that this reasoning was extended by the 1976 amendment to include nonprofessional school em-ployees.[6]

Thus, the function of the 1976 amendment in question was not to un-reasonably distinguish school employees from other seasonally employed workers, but to combine them with another class of employees to whom they are most similarly situated: professional school employees who can reasonably expect to be rehired at the onset of the next school term. As long as Herrera could reasonably expect to be rehired in the fall, she did not belong to that class of persons whom the Act was designed to assist. *See Williamson v. Mississippi Employment Security Commission,* _____Miss. _____, 347 So.2d 978 (1977). Since the distinction drawn by the amendment effectuates the purpose of the Act, it serves a legitimate governmental purpose.

Herrera does not allege that she was seeking reemployment or that she anticipated termination in the fall. Her allegations of unfairness are based on her expectation of receiving unemployment compensation during the summer of 1977, as she had in 1976. She alleges her "justified" expectation of benefits which never materialized created a period of "ag-gravated" unemployment for her. We find no support for her underlying premise that she was entitled to have the status quo remain unchanged be-cause she benefited from it in the past. Since the 1976 amendment ex-cluded her from unemployment compensation during the summer layoff, she was not entitled to benefits.

We find the referee correctly interpreted the Act and the amendment in question, and find no violation of the petitioner's constitutional rights. We, therefore, affirm the order of the Industrial Commission.

MR. JUSTICE CARRIGAN does not participate.

---

[5] Now § 203(b) of the Act, the 1975 amendment is substantially similar to the 1976 amendment with which we are concerned. Only the class of excluded employees is different.

[6] *See Harvey v. Director of Dept. of Emp. Sec.,* _____ R.I. _____, 385 A.2d 1057 (1978), for further explication: "[T]he legislative history [of the 1975 amendment] suggests that Congress was attempting to provide for similar treatment for all educational workers who are, in the lan-guage of the theater, 'in between engagements.'"