714 P.2d 472

**PIMA COMMUNITY COLLEGE, Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency, Appellee.**

No. 1 CA–UB 433.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 28, 1986.

Karp, Stolkin, & Weiss, P.C. by Ronald J. Stolkin, Tucson, for appellant.

Robert K. Corbin, Atty. Gen. by Frank Sagarino, Asst. Atty. Gen., Phoenix, for appellee.

## OPINION

GREER, Judge.

The issue in this case is whether a part-time student employed by a community college pursuant to a federally-funded work-study program is "a student enrolled and regularly attending classes" within the meaning of A.R.S. § 23–617.9(a) so as to exempt the college from classification as an "employer" for unemployment compensation tax purposes. We find that the student falls within the terms of the statutory exemption and reverse the determination of the Unemployment Insurance Appeals Board.

**1.** The federal statute establishing the work-study program, 42 U.S.C. § 2751(a) states: "The purpose of this part is to stimulate and promote the part-time employment of students, particularly

## I. FACTS

John Cox attended Pima Community College (PCC) from 1980 until the fall semester of 1982. While enrolled, he qualified for and received financial aid pursuant to a federally-funded work-study program. Under the program, Cox worked as a groundskeeper for nineteen hours a week and was paid the minimum wage from federal funds given to the college for the purpose of assisting financially needy students.[1] In order to remain eligible for the federally-funded position, federal law requires that participants retain a minimum of six credit hours per semester. When John Cox withdrew from all courses in the fall of 1982, he became ineligible for the position and filed for unemployment compensation benefits.

On January 21, 1983 the Arizona Department of Economic Security (ADES) issued its Notice of Liability for Employment or Wages, holding that part-time students performing services for the college and their wages are subject to unemployment insurance coverage. The decision, challenged by PCC, was affirmed by ADES on reconsideration and by the Unemployment Insurance Appeals Board on appeal. Appellant PCC has applied to this court for review pursuant to A.R.S. § 41–1993.

## II. ANALYSIS

A.R.S. § 23–617 provides in relevant part:

'Exempt employment' means employment not considered in determining whether an employing unit constitutes an 'employer' under this chapter and includes:

9. Service performed in the employ of a school, college, or university, if the service is performed:

(a) By a student enrolled and regularly attending classes at the school, college or university . . .

students who are in need of earnings from employment to pursue courses of study at eligible institutions."

The ADES has promulgated a regulation defining the statutory term "student":

> For the purpose of administering A.R.S. § 23–617.9, a student is defined as an individual registered for full-time attendance and regularly attending classes. The definition of full-time attendance used by the institution will apply.

A.C.R.R. R6–3–1301(S)(6). During the semesters at issue,[2] Cox was registered for less than the twelve credit units necessary to qualify as a "full-time" student as that term is defined by PCC. ADES and the Unemployment Insurance Appeals Board (Board) reasoned that because Cox was not a "full-time" student under the ADES regulation he was not a "student enrolled and regularly attending classes" at PCC within the meaning of § 23–617.9(a). Appellant PCC has challenged the validity of the ADES regulation before the Board and on appeal.

It is a fundamental principle of administrative law that an agency regulation, interpretative in nature, is not binding on this court and is of no effect to the extent that it conflicts with the proper interpretation of a statute. *McCarrell v. Lane*, 76 Ariz. 67, 258 P.2d 988 (1953); *Ferguson v. Arizona Dep't of Economic Security*, 122 Ariz. 290, 594 P.2d 544 (App.1979); *see generally*, Davis, *Administrative Law Treatise* § 7:10–15 at 36–75 (1979). We think that by adding the phrase "registered for full-time attendance" ADES has impermissibly restricted the intended scope of the statutory exemption.

The language "student enrolled and regularly attending classes" appears in the unemployment compensation statutes of several other states as well as in two federal statutes. A common thread which runs through cases construing this language on facts similar to our own is that if the student would not have been employed at the college or university but for his status as a student at that institution, the statu-tory exemption is applicable and the student is not entitled to receive unemployment benefits. *See, e.g., Hyde v. Industrial Comm'n*, 195 Colo. 67, 576 P.2d 541 (1978); *Bachrach v. Dep't of Industry, Labor and Human Relations*, 114 Wis.2d 131, 336 N.W.2d 698 (App.1983). Conversely, a student whose employment at a university is wholly unrelated to his status as a student is not "enrolled and regularly attending classes" if otherwise entitled to receive benefits. *See Warmington v. Employment Security Dep't*, 12 Wash.App. 364, 529 P.2d 1142 (1974).

*Hyde* involved two graduate students who were employed as teaching assistants while preparing thesis papers and studying independently for comprehensive exams. Although they were not attending classes in the traditional sense, the Colorado Supreme Court held that they were "enrolled and regularly attending classes" within the meaning of the statute and thus were ineligible for unemployment benefits. The court found that the purpose of the legislative exemption "was to embrace all persons who are essentially students" and, importantly, observed that the teaching assistant positions were contingent upon continued enrollment at the university. In *Warmington* on the other hand, the Washington court held that a graduate student preparing a thesis who was employed as a pre-doctoral lecturer was entitled to benefits because he was not "regularly attending classes." In that case, however, the court noted the complete absence of any relationship between the claimant's status as a student and his employment as a lecturer:

> Petitioner was not hired because he was a student. He was hired ... because of his 'unique expertise ... Mr. Warmington would have been hired to perform the same services even if he had not been enrolled.'

529 P.2d at 1145.

The most comprehensive and well-reasoned discussion of the statutory phrase

---

**2.** The base period at issue is the last quarter of 1981 and the first three quarters of 1982. This encompasses the fall semester of 1981 and the spring semester of 1982, during which time Cox was registered for seven credit hours. Cox worked full-time as a groundskeeper during the summer and did not take any classes. The parties concede he was an "employee" during that time and was not within the exemption of § 23–617.9(a).

appears in *Bachrach*, a Wisconsin case involving doctoral candidates working on their dissertations while employed as teaching or research assistants. As in *Hyde*, the positions at issue in *Bachrach* were offered exclusively to university students as a type of financial aid. The court held that the students were "regularly attending classes" and thus were ineligible for unemployment benefits. In construing the statutory exemption, the court adopted the definition of "student" used by federal agencies charged with the administration of two federal laws containing identical language.[3] The test utilized by the federal agencies turns on the relationship between the claimant's status as a student and his status as an employee:

> An employee who performs services in the employ of a school, college, or university as an *incident to and for the purpose of* pursuing the course of study at such school, college, or university has the status of student in the performance of such services. (Emphasis supplied).[4]

The *Bachrach* court rejected the appellant students' argument that this test rendered the requirement of "regularly attending classes" mere surplusage:

> The commission does not read 'regularly attending classes' out of the statute. The regular attendance requirement, as demonstrated by the quoted federal regulations, is not intended to differentiate between students who attend class meetings and those who do not. It is intended to differentiate between a person whose primary relation to the university is as an employee but who also takes courses, and a person whose primary relation to the university is as a student but who also is employed by the university.

336 N.W.2d at 702.

We agree with this interpretation of the statutory language. Obviously, the phrase was not intended to deny benefits to a person whose primary relation to the college is as an employee rather than as a student. We think it equally apparent that students employed by a college because they are students should not be allowed to reap the educational benefits of that position and receive unemployment benefits upon termination as well.

As pointed out in *Hyde*, if schools are required to pay unemployment compensation for positions that exist for the benefit of students, the availability of such positions will decrease due to the economic considerations involved:

> [T]he legislature undoubtedly recognized that a primary purpose of the teaching assistant program is to provide graduate students not only with financial assistance but also with teaching experience. The present program permits a graduate student to enter into a fairly short-term teaching assistant contract while he or she completes a degree. The program thus provides a number of persons with some assistance and experience and at the same time encourages a graduate student to complete his or her degree programs within the terms of his contract. If the University were required to pay unemployment contributions for such persons, the University would likely restructure the program to provide a few individuals with longer-term contracts (in order to minimize their costs in connection with the unemployment compensation program) rather than spreading the appropriation among the more numerous, shorter-term contracts. Such a restructuring therefore would have the undesirable effect of depriving some graduate of financial aid and teaching experience and would eliminate the present incentives for early completing of the degree program.

576 P.2d at 543. We think this policy argument applies with equal force to the effective operation of the federal work-study

---

3. 26 U.S.C. § 3306(c)(10)(B) of the Federal Unemployment Tax Act (FUTA); 26 U.S.C. § 3121(b) of the Federal Insurance Contributions Act (FICA).

4. 26 C.F.R. § 31.3306(c)(10)2(c)(2); 26 C.F.R. § 31.3121(b)(10)2(c); *see also*, Rev.Rul. 78–17, 1978–1 C.B. 306.

program. If community colleges are required to pay an unemployment compensation tax for the benefit of part-time students who are no longer eligible to retain their positions simply because they have failed to maintain a sufficient number of classes to qualify, community colleges will be discouraged from participating in such programs to the detriment of other financially needy students.

In conclusion, we find that A.C.R.R. R6–3–1301(S)(6) is inconsistent with the legislative intent, which we believe is to deny unemployment compensation benefits to persons whose employment is incidental to and in furtherance of their education. In this case, the ADES and the board awarded unemployment benefits to a student who would not have received the benefit of his position as groundskeeper but for his status as a student, basing their decision exclusively on the fact that, under the rule, he was not a "full-time" student as defined by PCC. The effect of the agency's interpretation of the word "student" is simply illogical and could effectively reduce the availability of programs designed to benefit part-time students.

We therefore hold A.C.R.R. R6–3–1301(S)(6) to be void and of no effect and remand to the Unemployment Insurance Appeals Board for entry of an order consistent with this opinion.

BROOKS and HAIRE, JJ., concur.