IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LAW OFFICE OF ANNE BRADY, PLLC, dba BRADY'S TAX SERVICE,
*Appellant*,

*v.*

STATE OF ARIZONA, DEPARTMENT OF ECONOMIC SECURITY,
ESA TAX UNIT,
*Appellee*.

No. 1 CA-TX 20-0011
FILED 6-1-2023

Appeal from the Arizona Tax Court
No. TX 2020-000688
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Law Office of Anne Brady, PLLC, Phoenix
By Anne Brady
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Michelle Nimmo
*Counsel for Appellee*

---

## OPINION

Presiding Judge D. Steven Williams delivered the opinion of the court, in which Judge David B. Gass and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

¶1        The Law Office of Anne Brady, PLLC, d/b/a Brady's Tax Service ("Brady's Tax Service"), challenges the tax court's judgment upholding the Arizona Department of Economic Security's ("ADES") determination of unemployment insurance tax liability on commissions it paid to two tax preparers. Because the record supports the tax court's conclusion that the tax preparers did not operate "independent of the control of the employing unit, other than that required by the internal revenue service for correct preparation of the returns," they were not exempt under A.R.S. § 23-617(23) for unemployment insurance tax purposes. We further strike down Arizona Administrative Code ("A.A.C.") R6-3-1720(B)(4) because it contravenes A.R.S. § 23-617(23). Accordingly, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Anne Brady, an attorney, owned and operated Brady's Tax Service, an income tax preparation business. Her husband, Richard Brady, worked for Brady's Tax Service as an enrolled agent (an individual designated by the Internal Revenue Service ("IRS") authorized to prepare tax returns). Between 2015 and 2018, Brady's Tax Service paid Frank Fieszel, also an enrolled agent, to prepare tax returns for the business's clients. As outlined in their written agreement, Fieszel worked as an independent contractor and Brady's Tax Service paid him on a commission-only basis for each tax return he prepared. Under the parameters established by Brady's Tax Service, Fieszel performed all work on the business's premises during regular business hours, using only the business's computers and software. The Bradys supervised Fieszel, a computer software program tracked his time, Richard Brady reviewed and signed all tax returns Fieszel prepared, and Brady's Tax Service retained all copies of those returns. Brady's Tax Service did not pay unemployment insurance tax on payments it made to Fieszel.

¶3            In 2017, Brady's Tax Service employed Connor Webb in a support staff position and paid unemployment insurance tax on wages paid to him. Apart from providing clerical support, Webb prepared tax returns using the business's tax preparation software. When Webb's employment ended, he applied for and received unemployment benefits.

¶4            In 2018, Brady's Tax Service rehired Webb to prepare tax returns as an independent contractor. As with Fieszel, Brady's Tax Service paid Webb on a commission-only basis and required him to perform all work onsite, using only the business's computers and software. Likewise, a computer program tracked Webb's time, the Bradys supervised his work, Richard Brady reviewed and signed all tax returns he prepared, and Brady's Tax Service retained all copies of the returns. Brady's Tax Service did not pay unemployment insurance tax on payments it made to Webb in 2018.

¶5            In 2018, ADES audited Brady's Tax Service from January 1, 2017 through June 30, 2018 for compliance with the unemployment insurance tax program. ADES then issued a Determination of Unemployment Insurance Liability, finding the commissions Brady's Tax Service paid Fieszel and Webb during the audit period constituted wages for purposes of the unemployment insurance tax. Brady's Tax Service challenged the determination and ADES affirmed it on reconsideration.

¶6            Brady's Tax Service then petitioned for review before the Appeals Board, which conducted an evidentiary hearing. Brady's Tax Service asserted that Fieszel and Webb worked as independent contractors, not employees, but, regardless of their status, A.R.S. § 23-617(23) exempted their tax preparation services from unemployment insurance coverage.

¶7            Applying A.R.S. § 23-617(23) and its implementing regulation, A.A.C. R6-3-1720(B)(4), the Appeals Board concluded that Fieszel and Webb worked for Brady's Tax Service as employees rather than independent contractors. Evaluating the indicia of control, the Appeals Board found: (1) Brady's Tax Service required the tax preparers to perform their work exclusively on the business's premises, (2) Brady's Tax Service required the tax preparers to perform their work using only the business's computers and software, (3) Brady's Tax Service restricted the tax preparers' working hours to the business's normal hours, (4) Anne and Richard Brady supervised the tax preparers as they worked, (5) Richard Brady reviewed and signed all returns prepared by the tax preparers, and (6) Brady's Tax Service retained all records of the returns. Despite recognizing the tax preparers' flexibility in determining their own

schedules, albeit limited to regular business hours, the Appeals Board determined Fieszel and Webb "were denied control and gave up control" to Brady's Tax Service, pointing specifically to Richard Brady's signing of all completed tax returns and the business's retention of all copies of the returns. Given its findings and conclusions, the Appeals Board affirmed ADES's reconsidered determination of unemployment insurance tax liability.

¶8        Brady's Tax Service appealed the final administrative decision to the tax division of the superior court, which affirmed the Appeals Board's decision. This timely appeal followed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), -2101(A)(1), and 41-1994.

## DISCUSSION

¶9        Without challenging the determination that Fieszel and Webb operated as employees rather than independent contractors, *see Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977) ("The failure to raise an issue . . . in briefs on appeal constitutes a waiver of the issue."), Brady's Tax Service contends that A.R.S. § 23-617(23) exempted their services from the state unemployment insurance program. In making this argument, Brady's Tax Service challenges the tax court's interpretation of both A.R.S. § 23-617(23) and A.A.C. R6-3-1720(B)(4) and argues that, as applied, the regulation impermissibly conflicts with the statute.

¶10        On review of a final administrative decision, we must "affirm the agency action unless . . . [it] is contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910(F). But we review statutory interpretation *de novo. Pinal Vista Props., L.L.C. v. Turnbull*, 208 Ariz. 188, 190, ¶ 6 (App. 2004). "Statutory interpretation requires us to determine the meaning of the words the legislature chose to use." *S. Ariz. Home Builders Ass'n v. Town of Marana*, 522 P.3d 671, 676, ¶ 31 (Ariz. 2023). "Absent ambiguity or absurdity, our inquiry begins and ends with the plain meaning of the legislature's chosen words . . . ." *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523, ¶ 11 (2021).

¶11        We apply the same principles of construction to the interpretation of administrative regulations. *Stapert v. Ariz. Bd. of Psych. Exam'rs*, 210 Ariz. 177, 179, ¶ 7 (App. 2005). An agency regulation, however, "is of no effect to the extent that it conflicts with the proper interpretation of a statute." *Pima Cmty. Coll. v. Ariz. Dep't of Econ. Sec.*, 148 Ariz. 302, 304

(App. 1986); *see also Dioguardi v. Superior Court*, 184 Ariz. 414, 417 (App. 1995) (providing that an appellate court will strike down an agency's rule that "would defeat the legislative purpose").

¶12        The legislature enacted the Employment Security Act ("the Act"), A.R.S. §§ 23-601 to -799.01, "to allow compensation for a limited period to those who are capable of working and available for work and are involuntarily unemployed through no fault of their own." *Ferguson v. Ariz. Dep't of Econ. Sec.*, 122 Ariz. 290, 291 (App. 1979); *see also* A.R.S. § 23-601 (stating the underlying policy of the  Act is that "the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own"). Because the Act is remedial, we must construe it "to include as many types of employment relationships as possible," *Ariz. Dep't of Econ. Sec. v. Little*, 24 Ariz. App. 480, 483 (1975), and an employing unit seeking exemption from payment of unemployment contributions bears the burden of showing that its workers were free from control other than that expressly permitted, *First Nat'l Benefit Soc'y v. Sisk*, 65 Ariz. 1, 6–7 (1946).

¶13        Under the Act, certain types of employment are "not considered in determining whether an employing unit constitutes an 'employer'" for the purpose of unemployment insurance coverage, including, in relevant part:

> (23) Services performed by an individual for an employing unit in the preparation of tax returns and related schedules and documents, if all services are performed for remuneration solely by way of commissions, *independent of the control of the employing unit, <u>other than that required by the internal revenue service for correct preparation of the returns</u>* . . . .

A.R.S. § 23-617(23) (emphasis added).

¶14        Given a plain reading, the statute exempts from unemployment insurance coverage the services of a tax preparer if performed on a commission-only basis and independent of unnecessary control. But the statute does not expressly delineate the parameters of permissible control.

¶15        Under the last antecedent rule, "a qualifying phrase [is] applied to the word or phrase immediately preceding as long as there is no contrary intent indicated." *Phoenix Control Sys., Inc. v. Ins. Co. of N. Am.*, 165

Ariz. 31, 34 (1990). Applying this rule of construction to A.R.S. § 23-617(23), the phrase "other than that required by the internal revenue service for correct preparation of the returns" modifies the preceding phrase "independent of the control of the employing unit." Read with that understanding, the permissible control exercisable by the employing unit —*to maintain the exemption for a tax preparer's services*—is limited to the control the IRS requires employing units to exercise to ensure the correct preparation of tax returns. "This interpretation is [also] supported by the principle that each word or phrase in a statute must be given meaning so that no part is rendered void, superfluous, contradictory, or insignificant." *Obregon v. Indus. Comm'n*, 217 Ariz. 612, 615, ¶ 16 (App. 2008). A contrary interpretation would render the phrase "independent of the control of the employing unit" meaningless. *See Collins v. State*, 166 Ariz. 409, 415 (App. 1990) (providing that we apply a sensible construction to avoid absurd results). Stated differently, A.R.S. § 23-617(23) exempts the services of a tax preparer from unemployment insurance coverage insofar as the employing unit exercises no control over the tax preparer except for that required of the employing unit by the IRS for the correct preparation of returns.

¶16        Here, without question, Brady's Tax Service paid Fieszel and Webb to prepare tax returns on a commission-only basis. Whether A.R.S. § 23-617(23) exempted the tax preparers' services from unemployment insurance coverage, therefore, turns on whether Brady's Tax Service exercised control over them other than that required by the IRS.

¶17        Because the Act does not identify what controls the IRS requires, it necessarily incorporates not only the regulations promulgated by the IRS, but also the enabling legislation—the Internal Revenue Code, 26 U.S.C. § 1 et seq. But the Appeals Board and tax court instead looked to A.R.S. § 23-617(23)'s implementing regulation, A.A.C. R6-3-1720(B), concluding that Brady's Tax Service deprived Fieszel and Webb of the control that the IRS required them to exercise by denying them the opportunity to sign and keep copies of the returns they prepared.[1] Under the interpretation adopted by both the Appeals Board and the tax court, the services of a tax preparer are statutorily exempt only if the tax preparer, personally, complies with A.A.C. R6-3-1720(B)(4).

¶18        The regulation provides, in relevant part:

---

[1] Although both the Appeals Board and the tax court found that Fieszel and Webb were not "permitted to retain copies of the returns," the record reflects only that Brady's Tax Service retained all copies of the returns.

(B) Income Tax Preparers. This subsection governs the determination of whether employment is exempt under A.R.S. § 23-617(23).

. . .

4. The services of the tax preparer will not be exempt if such individual doing the work is subject to any controls, whether exercised or not, other than those required by the IRS. <u>The IRS exercises control over tax preparers by imposing a penalty if the tax preparer</u>:

a. Does not sign the return (manual signature).

b. Does not furnish an employer's ID number and a Social Security Number.

c. Does not show the business address where the return was completed.

d. Does not keep copies or records of a return for three years available for inspection by the IRS.

e. Does not provide a copy of the complete return to the taxpayer.

f. Negligently or intentionally disregards the rules and regulations for preparing tax returns.

g. Willfully understates tax liability (preparer must ask reasonable questions when the information furnished by the taxpayer seems to be incomplete or incorrect, and some deductions require specific documentation which a preparer must be satisfied actually exists).

h. Endorses a refund check (excepting bank tax preparers).

i. Does not file an annual information report, Form 5717, by July 31 of each year.

A.A.C. R6-3-1720(B)(4) (emphasis added).

¶19          We interpret A.A.C. R6-3-1720(B)(4) to "further the statutory policy contained in its enabling legislation." *Marlar v. State*, 136 Ariz. 404, 411 (App. 1983). Our reading of the regulation, therefore, is informed by our holding that A.R.S. § 23-617(23) exempts a tax preparer's services from unemployment insurance coverage only if the employing unit exercises no control over the tax preparer other than that required of the employing unit by the Internal Revenue Code and the IRS for the correct preparation of returns. We will strike down a regulation that defeats its statutory purpose. *See Maldonado v. Ariz. Dep't of Econ. Sec.*, 182 Ariz. 476, 478 (App. 1994) (providing a regulation which defeats the legislative purpose behind its enabling legislation must be stricken down).

¶20          By adding the list in subsections (a) through (i), ADES impermissibly restricted the intended scope of the statutory exemption. *See Pima Cmty. Coll.*, 148 Ariz. at 303–04 (striking down ADES regulation defining a student as "an individual registered for full-time attendance" because it impermissibly limited the scope of A.R.S. § 23-617(9), which exempted from unemployment insurance coverage "students enrolled and regularly attending classes" at a college or university). While A.R.S. § 23-617(23) authorizes an employing unit to exercise control over the tax preparer to the extent required by the IRS for the correct preparation of returns, the regulation delimits the permissible control exercisable by an employing unit to only enforcing compliance with certain, enumerated IRS rules for which the IRS directly imposes a penalty on noncomplying tax preparers. Whether the list is construed as delineating the only controls an employing unit may impose without running afoul of the exemption or establishing controls an employing unit must impose for the exemption to apply, its application conflicts with the intent and language of the statute it was meant to implement. Because the narrow scope of the implementing regulation contravenes the legislative purpose, it cannot stand. Accordingly, we strike down A.A.C. R6-3-1720(B)(4) holding it void and of no effect. *See* A.R.S. § 23-617(23); *Pima Cmty. Coll.*, 148 Ariz. at 304 (striking down agency regulation when it "impermissibly restricted the intended scope of the statutory exemption").

¶21          Guided by A.R.S. § 23-617(23), the Internal Revenue Code, and the applicable IRS regulations, we must determine whether, by signing and retaining all copies of the returns prepared by Fieszel and Webb, Brady's Tax Service exceeded the control required of it for the correct preparation of returns. Under 26 U.S.C. § 6695(b), "[a]ny person who is a tax return preparer with respect to any return . . . who is required by [IRS] regulations . . . to sign such return . . . shall pay a penalty [for failure to sign the return]." Of particular relevance here, a corresponding IRS regulation

distinguishes between "a signing tax return preparer" — an "individual tax return preparer who has the primary responsibility for the overall substantive accuracy of the preparation of such a return" — and a "non-signing tax return preparer" — a "tax return preparer who is not a signing tax preparer but who prepares all or a substantial portion of a return." 26 C.F.R. § 301.7701-15(b)(1), (b)(2)(i).

¶22        Applying these provisions, Richard Brady, by reviewing each of the tax preparers' returns, assumed the primary responsibility for ensuring the overall accuracy of the returns. *See* 26 C.F.R. § 301.7701-15(b)(1). Therefore, Richard Brady was required to sign the returns, not Fieszel and Webb. *See* 26 C.F.R. § 1.6695-1(b). As such, Brady's Tax Service did not exceed the authority required of it under the Internal Revenue Code and applicable IRS regulations when Richard Brady signed the returns that Fieszel and Webb prepared.

¶23        Likewise, the Internal Revenue Code requires only signing tax return preparers to retain copies of their signed returns for the three-year period after the close of the return. 26 U.S.C. § 6107(b), (c) (noting that, by regulation, when two or more persons are tax return preparers with respect to the same return, compliance with the requirement of subsection (b) by one tax return preparer shall be deemed to be compliance with the requirements of such subsection by the other tax return preparer); 26 C.F.R. § 1.6107-1(b)(i)(A) (providing only the signing tax return preparer is required to keep a copy of the return). In this case, the signing tax return preparer, Richard Brady, complied with the statute when Brady's Tax Service maintained copies of the tax returns.

¶24        Given the limited scope of their services and Richard Brady's supervisory role, neither Fieszel nor Webb was required to sign or maintain the tax returns they prepared. Accordingly, Brady's Tax Service did not impose controls beyond that required by the Internal Revenue Code and applicable IRS regulations — or fail to impose necessary controls — when Richard Brady signed the tax returns Fieszel and Webb prepared, and the business retained all copies of the returns.

¶25        This determination does not, however, end our inquiry. ADES contends that Brady's Tax Service imposed other, disqualifying controls. Specifically, ADES asserts that Brady's Tax Service impermissibly required the tax preparers to perform all their work exclusively on the business's premises during regular business hours and using only the business's computers and software. In response, Brady's Tax Service argues that federal regulations necessitated these controls.

¶26            Citing 31 U.S.C. § 330, which governs the practice of representatives before the United States Department of the Treasury, and its implementing regulation, 31 C.F.R. § 10.22, which imposes a standard of due diligence on such practitioners, Brady's Tax Service contends that because it relied on the tax preparers' work product, it was required to use "reasonable care in engaging, supervising, training and evaluating" them. 31 C.F.R. § 10.22(b). In other words, Brady's Tax Service argues that the Bradys only exerted control over the tax preparers as necessary to comply with their federal due diligence requirements. Relying on *Loving v. IRS*, 742 F.3d 1013 (D.C. Cir. 2014), ADES counters that 31 U.S.C. § 330 has no application here because the tax preparers were not appearing before the Department of the Treasury.

¶27            In *Loving*, three tax return preparers sued the IRS, challenging the validity of regulations that required tax preparers to pass a qualifying exam, pay annual fees, and complete 15 hours of continuing-education courses each year. *Id.* at 1014–15. The tax preparers argued the regulations impermissibly exceeded the scope of the enabling statute, *see* 31 U.S.C. § 330(a)(1), which allows for the IRS to "regulate the practice of representatives of persons before the Department of the Treasury." *Loving*, 742 F.3d at 1014. The United States Court of Appeals for the D.C. Circuit held the regulations invalid as applied to tax preparers whose actions in merely preparing a return cannot be equated to "practice . . . before the Department of the Treasury." *Id.* at 1016–18. Indeed, the Circuit Court made clear "that the IRS's statutory authority under [31 U.S.C. § 330] cannot be stretched so broadly as to encompass authority to regulate tax-return preparers." *Loving*, 742 F.3d at 1015.

¶28            Although ADES correctly points out that 31 U.S.C. § 330 and its implementing regulation did not govern the tax preparers' work in this case, *Loving* does not relieve practitioners, including the Bradys, of their due diligence obligations. 31 C.F.R. §§ 10.2(a)(5), 10.3(a), (c), 10.22(b). Nonetheless, applying 31 C.F.R. § 10.22(b) here, we conclude Brady's Tax Service failed to show that the contested controls were necessary to ensure the accuracy of the tax preparers' returns. To be sure, the Appeals Board found that Fieszel and Webb (1) "were required to use [Brady's Tax Service's] computers and software exclusively"; (2) "could not work remotely, and they could not put a copy of the software on their own business computers or laptops"; and (3) "were precluded from purchasing professional tax preparation software elsewhere and running it on their [business] computers." Record evidence supports these findings. And Anne Brady testified that Brady's Tax Service required the tax preparers to perform all their work exclusively on the business's premises during

regular business hours to protect client confidentiality, not to ensure the correct preparation of the tax returns.

¶29        While the federal regulations required the Bradys to exercise due diligence before relying on the tax preparers' work, Brady's Tax Service has not pointed to any evidence, and our review of the record reveals none, that it was required to impose the controls at issue. Given (1) the remedial nature of the Act, (2) our obligation to construe it "to include as many types of employment relationships as possible," *Little*, 24 Ariz. App. at 483, and (3) Brady's Tax Service's failure to demonstrate that all of the controls it imposed on the tax preparers were necessary to ensure the accuracy of the returns, *First Nat'l Benefit Soc'y*, 65 Ariz. at 6–7, we conclude that A.R.S. § 23-617(23) did not exempt the tax preparers' services from unemployment insurance coverage. *See Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986) (explaining appellate courts will uphold a superior court's ruling if "correct for any reason, even if that reason was not considered by the [superior] court"). To be sure, an employer can impose lawful controls over its employees as it sees fit, including reasonable restrictions to protect client confidentiality, but it cannot claim an exemption from the unemployment insurance tax program if those controls exceed the parameters established by A.R.S. § 23-617(23).

## CONCLUSION

¶30        For the foregoing reasons, we affirm the determination of the tax court. As the prevailing party, ADES may recover its costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

