KOOLAU BAPTIST CHURCH, a Hawaii non-profit corporation, Appellant-Appellee, *v.* DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, Appellee-Appellant

NO. 10388

(CIV. NO. 71587)

APRIL 15, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI,
AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The Circuit Court of the First Circuit held the exaction of unemployment insurance taxes from the Koolau Baptist Church contravenes the Federal Unemployment Tax Act (FUTA) and the First Amendment. But we agree with the Department of Labor and Industrial Relations (the department) that the circuit court erred on both counts and reverse the ruling.

I.

The Hawaii Employment Security Law, Hawaii Revised Statutes (HRS) Chapter 383, provides a measure of protection against wage loss resulting from temporary unemployment for Hawaii's workers. Benefits paid to unemployed members of the work force are drawn from a trust fund financed by contributions from employers subject to the law. Every employer in the state for whom service is performed by an employee is obliged to make contributions to the unemployment compensation fund, unless the service is expressly excluded from coverage under the law.[1]

Koolau Baptist Church operates the Koolau Baptist Academy, a school offering instruction for pupils in grades one through twelve. On

---

[1]HRS § 383-2(a) reads:

(a) As used in this chapter, unless the context clearly requires otherwise, "employment," subject to sections 383-3 to 383-9, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied.

HRS § 383-7 delineates "employment" excluded from coverage. Section 383-7(9), which provides a partial exemption for service performed for non-profit organizations, reads:

Excluded service. "Employment" does not include the following service:

. . . .

(9) (A) Service performed in any calendar quarter in the employ of any organization exempt from income tax under section 501(a) of the federal Internal Revenue Code (other than an organization described in section 401(a) or under section 521 of such Code), if (i) the remuneration for such service is less than $50, or (ii) the service is performed by a fully ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order;

(B) Service performed in the employ of a school, college, or university, if such service is performed by a student who is enrolled and is regularly attending classes at such school, college, or university[.]

December 2, 1981, the department served the church with a Notice of Contribution Assessment for delinquent contributions on wages paid to the lay teachers and staff of the Koolau Baptist Academy. The church was apprised thereby that service performed for the school by the teachers and staff members was not excluded from coverage pursuant to HRS § 383-7(9)(A). Koolau Baptist Church disputed the department's determination and appealed to the Referee for Unemployment Compensation Appeals.

When Koolau's counsel filed the appeal, he submitted a letter delineating its objections to the administrative ruling. He asserted: (1) the obligation to make contributions to the unemployment compensation fund deprived the church of funds to further its religious mission, (2) the taxing provisions of HRS Chapter 383 had been preempted by FUTA, (3) the coverage determination would result in church-state entanglement, and (4) the taxing provisions of Chapter 383 were invalid because they failed to incorporate relevant provisions of FUTA as mandated by HRS §§ 383-166 and 383-167.

The department then issued an opinion letter stating the limited exclusion from coverage provided by HRS § 383-7(9)(A) applied only to service rendered the church by the pastor and not to the employment of lay teachers and other staff members of the school. In reply, Koolau cited *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772 (1981), where the Supreme Court read FUTA as not subjecting a church-affiliated school to the federal unemployment tax. The department closed out this exchange by noting Hawaii had not followed the federal lead on coverage under its unemployment compensation law as South Dakota had by adopting the relevant language of FUTA.

The Referee for Unemployment Compensation Appeals heard the

---

Thus, churches are afforded only a limited exemption from coverage and are required to make contributions to the fund in accord with HRS § 383-61, which reads in part:

Payment of contributions; wages not included. (a) Contributions with respect to wages for employment shall accrue and become payable by each employer for each calendar year in which he is subject to this chapter. The contributions shall become due and be paid by each employer to the director of labor and industrial relations for the fund in accordance with such regulations as the department of labor and industrial relations may prescribe, and shall not be deducted, in whole or in part, from the wages of individuals in such employer's employ.

appeal thereafter. Although the church argued as it had earlier that the assessment of unemployment taxes was precluded by the Supremacy Clause of the federal constitution and the First Amendment, the referee did not consider these arguments. Believing he was not vested with authority to deal with issues of constitutional dimension, he ignored them. Since the amount of the delinquency was not disputed, he summarily affirmed the departmental determination.

The church sought judicial review of his ruling. The Circuit Court of the First Circuit reviewed the record made before the referee, heard argument by counsel, and decided the referee erred. The court "found," *inter alia,* that "[t]he First Amendment to the United States Constitution prohibits 'excessive government entanglement' with religion and religious doctrine," "Congress in enacting the exclusions and exemptions [to coverage under FUTA] intended to preempt state laws as to those exclusions and exemptions, and it further intended that [they] should be applied uniformly to all states." Citing *St. Martin Evangelical Lutheran Church v. South Dakota,* the court further "found" that "[i]n 1970, Congress enacted legislation which expressly exempted 'church employees' from the coverage of FUTA," which "was also intended to apply uniformly to all state unemployment schemes." Hence, it "reversed [the referee's decision] as being contrary to and in violation of the First Amendment to the U.S. Constitution, of FUTA and of Sections 91-14(g)(1), (2), (4) and (5) H.R.S." The department's appeal from the circuit court's Decision and Order brings the case to this court for further review.

II.

We initially address the circuit court's conclusion that "Congress ... intended to preempt state laws" in enacting FUTA. We begin by examining the relationship between federal and state law in the realm of unemployment insurance.

A.

The federal law relevant to our discussion, 26 U.S.C. §§ 3301 to 3311 (FUTA), was originally enacted as part of the Social Security Act of 1935. FUTA represented a congressional attempt "to find a method by which the states and the federal government could 'work together to a common end.'" *Buckstaff Bath House Co. v. McKinley,* 308 U.S. 358,

363 (1939) (quoting *Steward Machine Co. v. Davis,* 301 U.S. 548, 588 (1937)). While it recognized the problem of unemployment and resultant wage loss "had become national in area and dimensions," *Steward Machine Co. v. Davis,* 301 U.S. at 586, Congress "did not undertake to create a nationally administered unemployment compensation system." *Salem College & Academy, Inc. v. Employment Division,* 298 Or. 471, 476, 695 P.2d 25, 29 (1985).

Congress elected "to leave unemployment insurance programs to the states," *id.,* impelling the desired state action by imposing a federal payroll tax on employers "but permitting tax credits of up to ninety per cent of the federal tax for their contributions to federally approved state unemployment compensation funds." *Black Construction Corp. v. Agsalud,* 64 Haw. 274, 279, 639 P.2d 1088, 1092 (1982) (footnote omitted); *see* 26 U.S.C. § 3302. That the proffer of tax credits "was designed so as to bring the states into [a] cooperative venture is clear." *Buckstaff Bath House Co. v. McKinley,* 308 U.S. at 363. And the hallmark of the American scheme for providing relief from temporary unemployment is still "cooperative federalism." *Salem College & Academy, Inc. v. Employment Division,* 298 Or. at 477, 695 P.2d at 30.

B.

The department maintains this federal-state system does not proscribe coverage of the lay teachers and staff of Koolau Baptist Academy under the Hawaii Employment Security Law; it argues the circuit court's reliance on *St. Martin* was misplaced.[2] We would have to agree; for Congress has not expressly or implicitly legislated preemption where coverage is concerned, and the Supreme Court by no means held FUTA's coverage provisions were meant "to apply uniformly to all state unemployment schemes." *See supra* note 2.

---

[2]The circuit court's "finding" No. 4 reads:

In 1970, Congress enacted legislation which expressly exempted "church employees" from the coverage of FUTA. (See Employment Security Amendments of 1970, Pub.L. 91-373, §104(b)(1), 84 Stat. 697). The exclusion and exemption of "church employees" from FUTA was also intended to apply uniformly to all state unemployment schemes. *St. Martin Evangelical Lutheran Church v. South Dakota,* [451] U.S. [772], 101 S. Ct. 2142 (1981).

On the contrary, in *St. Martin* the Court recognized that FUTA only prescribes "mandatory minimum standards of coverage" to be met by a state before an employer "is allowed a credit of up to 90% of the federal tax for 'contributions' paid to a state fund established under a federally approved state unemployment compensation law." *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. at 775 n.3.[3] And it explicitly confirmed that "[a] State . . . is free to expand its coverage beyond the federal minimum without jeopardizing its federal certification." *Id.*

As our territorial predecessors observed, "[t]here is nothing in the Federal Law which compels coverage under state laws to conform to the Federal coverage. (*Unemployment Compensation Commission v. National Life Insurance Co.,* 219 N.C. 576, 14 S.E. [2d] 689)." *In re Century Metalcraft Corp.,* 41 Haw. 508, 522 (1957). Nor is there anything in the Hawaii law prescribing strict conformity with the federal law where coverage is concerned.[4] Thus, we can only conclude the circuit court erred in reversing the referee on the ground that FUTA's "exclusion and exemption" of "church employees" precluded their coverage under the Hawaii Employment Security Law.

III.

Turning from the statutory to the constitutional issues posed by the department's appeal, we first consider whether the exaction of contribu-

---

[3]Note 3, in its entirety, reads:

FUTA imposes an excise tax on "wages" paid by an "employer" in covered "employment," 26 U.S.C. § 3301, as these terms are statutorily defined. § 3306 (1976 ed. and Supp. III). An employer, however, is allowed a credit of up to 90% of the federal tax for "contributions" paid to a state fund established under a federally approved state unemployment compensation law. § 3302 (1976 ed. and Supp. III). The requirements for federal approval are contained in §§ 3304 and 3309 (1976 ed. and Supp. III), and the Secretary of Labor must annually review and certify the state plan. §§ 3304(a) and (c) (1976 ed. and Supp. III). All 50 States have employment security laws implementing the federal mandatory minimum standards of coverage. A State, of course, is free to expand its coverage beyond the federal minimum without jeopardizing its federal certification.

[4]Koolau Baptist Church argues HRS §§ 383-166 and 383-167 compel the exemption of "church employees" from coverage under the Hawaii law because they are excluded from coverage under FUTA. We have carefully read the cited provisions but find nothing supporting the church's position.

tions to maintain the State's unemployment compensation fund impinges upon the free exercise of religion by Koolau Baptist Church and its members.

### A.

"Certain aspects of religious exercise cannot, in any way, be restricted or burdened by either federal or state legislation." *Braunfeld v. Brown,* 366 U.S. 599, 603 (1961). "The door of the Free Exercise Clause stands tightly closed against any governmental regulation of religious *beliefs* as such, *Cantwell v. Connecticut,* 310 U.S. 296, 303." *Sherbert v. Verner,* 374 U.S. 398, 402 (1963) (emphasis in original). "However, the freedom to act, even when the action is in accord with one's religious convictions, is not totally free from legislative restrictions. *Cantwell v. Connecticut, supra,* at pp. 303-304, 306." *Braunfeld v. Brown,* 366 U.S. at 603.

The case at bar does not implicate religious beliefs as such; nor is it one where the "religion [purportedly] prohibits the acceptance of [unemployment compensation] benefits [or] bars all contributions ... to the [unemployment insurance] system." *United States v. Lee,* 455 U.S. 252, 255 (1982). Moreover, "[t]he exaction here is in no way based on activities or resources that are more characteristic of schools than of other kinds of employers or institutions, let alone on [Koolau Baptist Academy's] religious character or the content of its programs." *Salem College & Academy, Inc. v. Employment Division,* 298 Or. at 486, 695 P.2d at 35. The levy in question "focuses solely on the economic and social aspect of the employment relation and the cost that unemployment imposes on the [affected] employee and on society." *Id.*

Koolau Baptist Church does not refer us to a particular religious tenet in claiming on First Amendment grounds an exemption from coverage by the Hawaii Employment Security Law. It asserts "[t]he function of the faculty or staff member of the church school is *per se* a religious exercise" and implies the imposition of any financial burden on the school by the State infringes religious freedom. Yet, "[n]ot all burdens on religion are unconstitutional," *United States v. Lee,* 455 U.S. at 257 (citations omitted), for "[i]t is true that activities of individuals, even when religiously based, are often subject to regulation by the States in the exercise of their undoubted power to promote the health,

safety, and general welfare, or the Federal Government in the exercise of its delegated powers." *Wisconsin v. Yoder,* 406 U.S. 205, 220 (1972) (citations omitted).

The focus of the unemployment insurance program, as noted earlier, is "the economic and social aspect of the employment relation" and the detrimental consequences of unemployment. *Salem College & Academy, Inc. v. Employment Division,* 298 Or. at 486, 695 P.2d at 35. The burdens imposed thereby are the same for all non-profit organizations operating schools; Koolau Baptist Academy has not been singled out for different treatment because of its religious orientation.

We realize "[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." *Wisconsin v. Yoder,* 406 U.S. at 220 (citations omitted). But the payments sought by the State here "are financial burdens only in the same sense that the costs of employing paid workers at all are financial burdens." *Salem College & Academy, Inc. v. Employment Division, supra.* If the church had chosen to engage in religious activity without paid personnel other than an ordained minister,[5] there would be no obligation for contributions to the unemployment compensation fund.

"It is virtually self-evident that the Free Exercise Clause does not require an exemption from a governmental program unless, at a minimum, inclusion in the program actually burdens the claimant's freedom to exercise religious rights. See, *e.g., United States v. Lee,* 455 U.S. 252, 256-257 (1982); *Thomas v. Review Board, Indiana Employment Security Div.,* 450 U.S. 707, 717-718 (1981)." *Tony and Susan Alamo Foundation v. Secretary of Labor,* ___ U.S. ___, 105 S. Ct. 1953, 1963, 85 L. Ed. 2d 278, 290 (1985). "While there is no formal test for a *de minimus* burden, there must be a substantial burden—that is, one which would inhibit the practice of the religion and in effect be a coercion to forego the practice." J. Nowak, R. Rotunda, and J. Young, *Constitutional Law* ch. 19, § 111 A 1054 (2d ed. 1983) (footnote omitted). Where there is a showing "that the law burdens the practice of a religious belief the state

---

[5]HRS § 383-7(9)(A)(ii) excludes from coverage service "performed by a fully ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order."

must show . . . an overriding or compelling secular reason for [not granting] an exemption . . . ." *Id.* Put another way, "where a significant conflict between permissible goals of the state and religious practices exist[s], a balancing test is used to measure whether the state has exceeded its constitutional power." *Young Life v. Division of Employment & Training,* ___ Colo. ___, ___, 650 P.2d 515, 524 (1982) (citing *Thomas v. Review Board* and *Sherbert v. Verner*). Inasmuch as we perceive no conflict of a dimension calling for a balancing test here, we proceed to the remaining issue, whether the exaction of unemployment insurance contributions from Koolau Baptist Church violates the Establishment Clause.[6]

B.

When the question is whether a statute transgresses the Establishment Clause or not, the analysis "must begin with consideration of the cumulative criteria developed by the [Supreme] Court over many years." *Lemon v. Kurtzman,* 403 U.S. 602, 612 (1971). It is now settled that "the criteria to be used in determining whether a statute violates the Establishment Clause are whether the statute has a secular legislative purpose; whether its primary effect is one that neither advances nor inhibits religion; and whether it fosters excessive government entanglement with religion." *Tony and Susan Alamo Foundation v. Secretary of Labor,* ___ U.S. at ___ n. 30, 105 S. Ct. at 1964 n.30, 85 L. Ed. 2d at 291 n.30 (citation omitted); *Lemon v. Kurtzman,* 403 U.S. at 612-13.

Koolau Baptist Church does not deny the Hawaii Employment Security Law has a secular legislative purpose and the statute's primary effect is one that does not advance or inhibit religion. The church's position is that the "[i]nclusion of the Church in the coverage of the

---

[6]Even if we were to weigh the State's interest in alleviating wage loss due to unemployment against Koolau Baptist Church's interest in not incurring the additional expense of unemployment insurance contributions in hiring teachers, in all probability we would reach the conclusion that the statute does not violate the Free Exercise Clause. For the Supreme Court has said a law that "regulates a secular activity and, as applied to appellants, operates so as to make the practice of their religious beliefs more expensive" does not necessarily infringe the free exercise of religion. *Braunfeld v. Brown,* 366 U.S. at 605.

Employment Security Law results in violation of the Establishment Clause by creating excessive, highly intrusive relationships of government with a religious organism." Citing *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490 (1979), it argues "excessive entanglements would arise from the benefit eligibility determination process."[7]

The administrative decision reviewed by the circuit court, however, dealt only with liability for delinquent contributions to the unemployment compensation fund. Moreover, *NLRB v. Catholic Bishop of Chicago* arose in a totally different context, and the Supreme Court expressly reserved judgment on the matter of *excessive* entanglement.[8] Under the circumstances, we are not in a position to rule the process of determining eligibility for benefits under the law fosters excessive government entanglement with religion.

---

[7]The brief submitted by the church in relevant part reads:

Under §383-30 of the Hawaii Employment Security Law, an employee subject to the Act is disqualified from receiving the benefit to which otherwise he would be entitled if he left his employment "voluntarily without good cause" or was discharged for "misconduct" in connection with his employment. The "misconduct" condition likewise obtains in the federal statute (26 U.S.C. §3304(a)(10)), while "good cause" in voluntary terminations has long been accepted as an implied term. Determination of whether a discharge is for misconduct, or whether a voluntary termination is for "good cause", is a function of the State officer who administers the unemployment compensation program. A critically important group of employees in religious schools is its teachers. The Supreme Court, in *NLRB v. Catholic Bishop of Chicago, supra,* addressed the matter of government inquiry into teacher dismissals in such schools as follows:

"It is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but the *very process of inquiry* leading to findings and conclusions."

*Id.* at 502. (Emphasis supplied). This entangling and chilling process results from involvement of government in a "church-teacher relationship in a church-operated school [which] differs from the employment relationship in a public or other non-religious school." *Id.* at 504.

[8]The case arose out of the National Labor Relations Board's certification of several labor unions as collective bargaining representatives for lay teachers in schools operated by the Bishop of Chicago and the Diocese of Fort Wayne-South Bend, Inc. The Bishop and the Diocese refused to recognize or bargain with the unions, and the Board issued cease-and-desist orders. The orders were challenged, and the Court of Appeals for the Seventh Circuit denied enforcement. The Supreme Court affirmed the decision of the court of appeals, but did not reach issues related to the Religion Clauses. The decision was affirmed on the ground that "Congress did not contemplate that the Board would require church-operated schools to grant recognition to unions as bargaining agents for their teachers." 440 U.S. at 506.

The church claims "it is possible that cause may arise which will warrant dismissal, on religious grounds, of an employee, or will give rise to a dispute which an employee may claim is 'good cause' for leaving." This, it contends, will "involve[] the state in the determination of religious issues." We shall deal with this eventuality if and when it comes to pass and is a matter of record. At the moment, there is no cause for us to think dismissals of lay teachers and staff members of church schools "over matters of religious doctrine are so frequent as to require [an] exemption [of the schools from] the unemployment [insurance program] on that account." *Salem College & Academy, Inc. v. Employment Division,* 298 Or. at 487, 695 P.2d at 36 (footnote omitted).

"A further form of excessive entanglement," in the church's view, arises from the imposition on religious schools of "extensive registration, record-keeping, financial reporting and informational requirements." We also discern no "excessive entanglement" with respect to these requirements. The petitioners in a recent case decided by the Supreme Court argued in similar vein that application of the Fair Labor Standards Act's record-keeping requirements would have a primary effect of inhibiting religious activity and would foster an excessive government entanglement with religion. *See Tony and Susan Alamo Foundation v. Secretary of Labor,* ___ U.S. at ___, 105 S. Ct. at 1964, 85 L. Ed. 2d at 290-91. The Court's response was:

> The Establishment Clause does not exempt religious organizations from such secular governmental activity as fire inspections and building and zoning regulations, see *Lemon, supra,* at 614, and the

---

What the Court said in *Catholic Bishop* is not controlling when the issue is "entanglement" in the context of the Establishment Clause. The inquiry there was a limited one that did not reach "excessive entanglement" from the constitutional standpoint, as the following excerpt from the Court's opinion indicates:

> The Board argues that it can avoid excessive entanglement since it will resolve only factual issues such as whether an anti-union animus motivated an employer's action. But at this stage of our consideration we are not compelled to determine whether the entanglement is excessive as we would were we considering the constitutional issue. Rather, we make a narrow inquiry whether the exercise of the Board's jurisdiction presents a significant risk that the First Amendment will be infringed.

440 U.S. at 502. And like the Supreme Court of Oregon, we believe "the risk of state involvement in internal 'conflicts' is less in administering unemployment compensation than in administering the collective bargaining process." *Salem College & Academy, Inc. v. Employment Division,* 298 Or. at 487 n.12, 695 P.2d at 36 n.12.

recordkeeping requirements of the Fair Labor Standards Act, while perhaps more burdensome in terms of paperwork, are not significantly more intrusive into religious affairs.

*Id.* at ___, 105 S. Ct. at 1964, 85 L. Ed. 2d at 291 (footnote omitted). We have no reason to believe the record-keeping requirements of the Hawaii Employment Security Law are more onerous than those of the Fair Labor Standards Act.

The Decision and Order of the circuit court is vacated and the case is remanded for entry of a judgment consistent with this opinion.

*Wilfredo Tungol* (*Wendy K. Lang* on opening brief, *Wilfredo Tungol* on reply brief), Deputy Attorneys General, for appellee-appellant.

*Philip J. Murren* (with him on the brief: *Bentley Ball* and *Sandra E. Wise; Ball & Skelly,* of counsel; and *Scott A. Makuakane; Goodsill, Anderson, Quinn & Stifel,* of counsel) for appellant-appellee.