RALPH PALIKAPU O'KAMOHOALII DEDMAN and DR. NOA EMMETT AUWAE ALULI, Intervenors-Appellants, and VOLCANO COMMUNITY ASSOCIATION, et al., Petitioners, *v.* BOARD OF LAND AND NATURAL RESOURCES, et al., Appellees

NO. 11126

(G.S. NO. 9/26/85-5)

AND

RALPH PALIKAPU O'KAMOHOALII DEDMAN and DR. NOA EMMETT AUWAE ALULI, Petitioners-Appellants, and LEHUA LOPEZ, et al., Petitioners, *v.* BOARD OF LAND AND NATURAL RESOURCES, et al., Appellees

NO. 11334

(CDUA NO. HA-12/20/85-1830)

JULY 14, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, JJ. AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE HEEN IN PLACE OF WAKATSUKI, J., EXCUSED

OPINION OF THE COURT BY LUM, C.J.

I.

This appeal presents us with various challenges to the approval of the development of geothermal energy in the Kilauea Middle East Rift Zone ("KMERZ") on the island of Hawaii. The two separate appeals taken from the decisions of the Board of Land and Natural Resources ("Board") were consolidated at oral argument as they present similar facts and issues to this court. Hawaii Rules of Appellate Procedure 3(b).

Both cases challenge the decision to permit geothermal energy development in the KMERZ area on the ground that it violates Appellants' right to freely exercise their religion. In No. 11126, Appellants also allege the Board failed to adequately consider their religious claims in weighing the criteria for establishing a geothermal resource subzone under Hawaii Revised Statutes ("HRS") § 205-5.2(d)(3) (1985).

Other errors alleged on appeal concern the designation of the area as a geothermal resource subzone and the grant of a permit to develop a 25 megawatt ("MeW") geothermal generator with exploration for development of another 75 MeW of geothermal energy in the future.

We affirm.

## II.

In 1983 the Hawaii legislature passed the Geothermal Energy Act which granted the Board of Land and Natural Resources primary responsibility for establishing geothermal resource zones within the state. Act 296, § 3, 1983 Haw. Sess. Laws 638, *codified at* HRS § 205.2(a) (1985). Once the Board has established such zones, if the project falls within an area zoned conservation land, as in the present case, then the Board has jurisdiction to approve the project. Act 151, § 2, 1984 Haw. Sess. Laws 279, *codified at* HRS § 205-5.1 (d) (1985).

In the present case, Appellees The Estate of James Campbell and True/Mid-Pacific Geothermal Ventures (collectively "Campbell") applied for a conservation district use permit in the Kahaualeʻa area on March 2, 1982. Over the next year, the Board received the environmental impact statement on the application and conducted contested case hearings concerning this matter. On February 25, 1983, the Board heard oral argument on the application, propounded its findings of fact and conclusions of law, and rendered its Decision and Order ("February 25, 1983 Decision"). The February 25, 1983 Decision granted Campbell the permit with 43 conditions on exploration and development of baseline activities.

In June of 1983, volcanic eruptions in the Kahaualeʻa area caused some question as to the safety of tapping geothermal resources in the specific site approved. In May of 1984, the Board proposed administrative rules concerning hearings on the designation and regulation of geothermal resource subzones. Also in May of 1984, the legislature passed Act 151, which mandated the Board to assess the February 25, 1983 Decision regarding the Kahaualeʻa area as a geothermal resource subzone. 1984 Haw. Sess. Laws § 3, at 281. In July, the Board's administrative rules concerning geothermal subzones were adopted, and in August they were amended.

Throughout 1984, various public and contested case hearings were held around the island of Hawaii concerning designation of the Kahaualeʻa area as a subzone. On December 28, 1984, the Board issued its preliminary Decision and Order approving the

designation of the Kahaualeʻa area as a geothermal subzone ("December 28, 1984 Decision"). The decision instructed Campbell to explore the possibility of a land swap wherein the Kahaualeʻa land, which is situated adjacent to Volcano National Park, would be exchanged for land in the Wao Kele ʻO Puna Natural Area Reserve (to the east) in the KMERZ. On August 10, 1984, Campbell applied for a conservation district use permit to develop 100 MeW of geothermally generated electricity in the KMERZ.

During much of 1985 more public and contested case hearings were held on designation of the KMERZ as a geothermal resource subzone. In October of 1985, the Board amended the December 28, 1984 Decision and approved the land swap but included an area to be later given to the nearby national park.

In November of 1985, Appellants were granted intervenor status in the scheduled contested case hearings concerning the approval of the KMERZ area as a geothermal resource subzone. The hearings were held from November 13 to 15 in Hilo. On December 20, 1985, the Board issued its Decision and Order, and on April 9, 1986, it issued findings of fact and conclusions of law ("April 9, 1986 Decision") approving of 9,014 acres as a geothermal resource subzone.

On December 27, 1985, the State and Campbell Estate exchanged deeds, the State receiving the Kahaualeʻa land and Campbell Estate receiving a portion of the KMERZ area. The State reserved, however, mineral rights, including the underground steam, and required Campbell Estate "covenant that the use and enjoyment of the land conveyed shall not be in support of any policy which discriminates against anyone based upon race, creed, color or national origin." *See* HRS § 171-64 (1985).

The Board accepted Campbell's application for a conservation district use permit on January 3, 1986 and required that they complete an environmental impact statement on the proposed action. A public hearing on the application was heard on January 13, 1986, at which time a contested case hearing was requested. Contested cases hearings were held from February 18 to 23, 1986 and on March 14, 1986. The Board issued its Decision and Order on April 11, 1986 later amended by the findings of fact and conclusions of law filed June 18, 1986 ("June 18, 1986 Decision"). The June 18,

1986 Decision permits Campbell to explore, develop, and produce up to 25 MeW of geothermal energy, and allows Campbell to explore for the future development of an additional 75 MeW, all subject to compliance with conditions on archaeological sites and air, water, land, noise, and light pollution monitoring.

Defendants subsequently filed a motion to appeal to this court. The Board granted Appellants' motion on September 28, 1986.[1]

## III.

Appellants' religious claims with regard to both the designation of a geothermal resource subzone and the granting of the permit are essentially the same. Hence, this issue is treated immediately below. Challenges to the Board's exercise of discretion involve separate issues and are treated separately for each appeal in section IV.

Appellants' main contention on appeal is that the approval of the geothermal project will infringe on their religious practices as "Pele practitioners." According to Appellant Aluli, the goddess[2] Pele migrated to the Northwestern Hawaiian Islands from Tahiti. She then moved down the island chain until she reached the island of Hawaii where she lives today. Areas in the island chain where she attempted to establish herself are considered sacred. Appellant Aluli identified as especially sacred the area "from Moku'a'weoweo [the top of], Mauna Loa, all the way down including these areas from Puna to Ka'u" on the southeastern portion of the island. Phenomena associated with the volcanic activity, i.e., heat, steam, magma, as well as the surrounding landscape, i.e., ferns, shrubs, land and even the rain, are also considered sacred. Development of geothermal resources in the area, Appellants contend, will impinge

---

[1] In 1985, the legislature provided for appeals directly to the supreme court from decisions of the Board approving a project within the resource subzone. Act 226, § 1, 1985 Haw. Sess. Laws 414, *codified at* HRS § 205-5.1(f) (1985). Jurisdiction over the present appeal is based on this subsection.

[2] According to Appellants, Pele is considered either an akua (god) or an aumakua (family or personal god). This distinction has significance insofar as one witness considered Pele as an aumakua, and worshipped Pele in her home.

on their right to freely exercise their religion as guaranteed under the first amendment to the United States Constitution[3] and article I, section 4 of the Hawaii Constitution.[4]

In order to find an unconstitutional infringement on Appellants' religious practices,

> it [is] necessary to examine whether or not the activity interfered with by the state was motivated by and rooted in a legitimate and sincerely held religious belief, whether or not the parties' free exercise of religion had been burdened by the regulation, the extent or impact of the regulation on the parties' religious practices, and whether or not the state had a compelling interest in the regulation which justified such a burden.

*State ex rel. Minami v. Andrews,* 65 Haw. 289, 291, 651 P.2d 473, 474 (1982). *Accord Wisconsin v. Yoder,* 406 U.S. 205 (1972). Moreover, the United States Supreme Court has "long recognized a distinction between the freedom of individual belief, which is absolute, and the freedom of individual conduct, which is not absolute." *Bowen v. Roy,* 476 U.S. ___, ___, 106 S. Ct. 2147, 2152, 90 L. Ed. 2d 735, 744 (1986). *See Braunfeld v. Brown,* 366 U.S. 599, 603 (1961); *Reynolds v. United States,* 98 U.S. (8 Otto) 145 (1879). *Accord Koolau Baptist Church v. Department of Labor,* 68 Haw. ___, ___, 718 P.2d 267, 271 (1986).

Neither the Board nor Campbell questions the legitimacy and sincerity of Appellants' religious claims. We therefore turn to the issue of whether or not the parties' free exercise of religion had been burdened by the regulation, and the extent or impact of the regulation on the parties' religious practices.

As a preliminary matter, "it is necessary in a free exercise case for one to show the coercive effect of the [law] as it operates against him in the practice of his religion." *School District of Abington Township v. Schempp,* 374 U.S. 203, 223 (1963). *Accord Thomas v. Review Board, Indiana Employment Security Division,* 450 U.S. 707, 717-18 (1981); *Koolau Baptist Church v. Department of Labor,* 68 Haw. at ___,

---

[3] This amendment reads in part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I.

[4] This section provides in part: "No law shall be enacted respecting an establishment of religion, or prohibiting the free exercise thereof[.]" Haw. Const. art. I, § 4.

718 P.2d at 272 (1986). Appellants assert this burden through testimony that construction of geothermal energy plants will desecrate the body of Pele by digging into the ground and will destroy the goddess by robbing her of vital heat. They claim this will interfere with their ritual practices, and will disable them from training young Hawaiians in traditional beliefs and practices (e.g., chant and hula). As such, approval of the geothermal plant does not regulate or directly burden Appellants' religious beliefs,[5] nor inhibit religious speech.[6] Further, the Board's action does not compel them, by threat of sanctions, to refrain from religiously motivated conduct[7] or engage in conduct they find objectionable on religious grounds.[8] *See Bowen*, 476 U.S. at ____, 106 S. Ct. at 2153-54, 90 L. Ed. 2d at 746 (plurality opinion); *Braunfeld*, 366 U.S. at 603.

Rather, Appellants assert an infringement on their religious practices. In order to demonstrate the coercive effect of the geothermal project, Appellants must show a "substantial burden" on religious interests. *Koolau*, 68 Haw. at ____, 718 P.2d at 272; *Wisconsin v. Yoder*, 406 U.S. at 218. Yet it is uncontested that "[n]either of the [Appellants] nor any of the witnesses testified that they ever conducted or participated in religious ceremonies on this land." And the Board specifically concluded that "[t]here is no indication that tapping this heat source from the earth has diminished or negatively affected the eruptive nature of Kilauea Volcano." There is simply no showing of "the kind of objective danger to the free

---

[5] *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985); *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985); *Follet v. Town of McCormick*, 321 U.S. 573, 577-78 (1944); *Murdock v. Pennsylvania*, 319 U.S. 105, 112 (1943).

[6] *Cf. Widmar v. Vincent*, 454 U.S. 263 (1981); *Wooley v. Maynard*, 430 U.S. 705 (1977); *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

[7] *Cf. Goldman v. Weinberger*, 475 U.S. 503 (1986); *Sherbert v. Verner*, 374 U.S. 398 (1963); *Braunfeld v. Brown*, 366 U.S. 599 (1961); *Prince v. Massachusetts*, 321 U.S. 158 (1944); *Cox v. New Hampshire*, 312 U.S. 569 (1941); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Reynolds v. United States*, 98 U.S. (8 Otto) 145 (1879).

[8] *Cf. Hobbie v. Unemployment Appeals Comm'n of Florida*, ____ U.S. ____, 107 S. Ct. 1046, 94 L. Ed. 2d 190 (1987); *Thomas v. Review Board. Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981); *United States v. Lee*, 455 U.S. 252, 259 (1982); *Wisconsin v. Yoder*, 406 U.S. 205 (1972); *Gillette v. United States*, 401 U.S. 437 (1971); *Sch. Dist. Abington Township v. Schempp*, 374 U.S. 203 (1963); *Torcaso v. Watkins*, 367 U.S. 488 (1961); *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943); *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).

exercise of religion that the First Amendment was designed to prevent." *Wisconsin v. Yoder,* 406 U.S. at 218.

To invalidate the Board's actions based on the mere assertion of harm to religious practices would contravene the fundamental purpose of preventing the state from fostering support of one religion over another.[9] As Judge Learned Hand stated:

> The First amendment . . . gives no one the right to insist that in pursuit of their own interests others must conform their conduct to his own religious necessities. . . . We must accommodate our idiosyncracies, religious as well as secular, to the compromises necessary in communal life[.]

*Otten v. Baltimore & Ohio R. Co.,* 205 F.2d 58, 61 (2d Cir. 1953). *Accord Estate of Thornton v. Caldor, Inc.,* 472 U.S. 703, 710 (1985).

We find no merit to Appellants' claim that the project will substantially burden their religious practices. As the Board stated, "[b]y virtue of the land exchange, the proposed development site will be an additional 5 to 10 miles away from Moku'a'weoweo and Halema'uma'u where tradition suggests Pele to reside." Moving the project away from the volcanic phenomena associated with Pele further accommodates Appellants' religious practices.

The free exercise clauses of the state and federal constitutions are "written in terms of what the government cannot do to the individual, not in terms of what the individual can extract from the government." *Sherbert v. Verner,* 374 U.S. 398, 412 (1963) (Douglas, J., concurring). *Accord Bowen,* 476 U.S. at ____, 106 S. Ct. at 2152, 90 L. Ed. 2d at 744. *See Crow v. Gullet,* 541 F. Supp. 785, 791 (D.S.D. 1982) ("the free exercise clause places a duty upon a state to keep from prohibiting religious acts, not to provide the means or the environment for carrying them out."), *aff'd* 706 F.2d 856 (8th Cir.) (per curiam), *cert. denied sub nom. Fools Crow v. Gullet,* 464 U.S. 977

---

[9] The entire amendment was designed to insulate religious activity from state involvement. *See Everson v. Bd. of Education,* 330 U.S. 1, 8-10 (1947); *Walz v. Tax Comm'n,* 397 U.S. 664, 668 (1970); *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 730 (1871). *See generally* L. Tribe, *American Constitutional Law* 814-15 (1978); McCoy, *A Unifying Theory for the Religion Clauses of the First Amendment,* 39 Vand. L. Rev. 249, 255 & n.20 (1978). The Supreme Court has summarized the purpose behind the free exercise clause thus: "Congress [is] deprived of all legislative power over mere opinion, but [is] left free to reach actions which [are] in violation of social duties or subversive of good order." *United States v. Reynolds,* 98 U.S. (8 Otto) at 164.

(1983). *See also Inupiat Community of Arctic Slope v. United States,* 548 F. Supp. 182, 188-89 (D. Alaska 1982), *aff'd* 746 F.2d 570 (9th Cir. 1984) (per curiam); *cert. denied* ___ U.S. ___, 106 S. Ct. 68 (1985).

## IV.

Appellants' other objections to development of geothermal energy in the area allege errors by the Board peculiar to each of the Board's decisions: designation of a geothermal resource subzone in No. 11126 and permit approval of a geothermal site in No. 11334.

### A. Case No. 11126

Appellants assert the Board's procedure in designating the area as a geothermal resource subzone violates due process in that the Board's Administrative Rule § 13-184-6[10] failed to provide an "ascertainable standard sufficient to meet constitutional requirements," and the Board's delegate, the Department of Water and Land Development ("DOWALD") failed to adequately assess the potential effects of subzoning. They further allege the Board erred in accepting or rejecting their proposed findings concerning the impact of the proposed development on Pele practitioners. We take each issue in turn.

---

[10] This rule reads:

Criteria for the designation of subzones. The board, in designating an area a geothermal resource subzone, shall be guided by the selection of those areas that can demonstrate an acceptable balance among the criteria set forth below:
  (1) That the area has potential for geothermal activities;
  (2) That there is a known or likely prospect for the utilization of geothermal resources for electrial energy production;
  (3) That any potential geologic hazards to geothermal production or use in the proposed area are examined;
  (4) That any environmental or social impacts of the development of geothermal resources within the proposed area be considered;
  (5) That the compatiblity of development and utilization of geothermal resources within the proposed area is considered with other allowed uses within the area and within the surrounding lands; and
  (6) That the potential benefits to be derived from geothermal development and utilization in the proposed area be in the interest of the county or counties involved in the State as a whole.

Administrative Rules of the Department of Land and Natural Resources, § 13-184-6 (1984).

In the past, we have given great deference to an administrative agency's interpretation of its legislative mandate and its own administrative rules. *See, e.g., Aio v. Hamada,* 66 Haw. 401, 407, 664 P.2d 727, 731 (1983); *Treloar v. Swinerton & Walberg Co.,* 65 Haw. 415, 424, 653 P.2d 420, 426 (1982). "Although administrative convenience or even necessity cannot override the constitutional requirement of due process, . . . agencies 'should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.' " *Yamada v. Natural Disaster Claims Commission,* 54 Haw. 621, 627, 513 P.2d 1001, 1005 (1973) (citation omitted) (quoting *F.C.C. v. Pottsville Broadcasting Co.,* 309 U.S. 134, 143 (1940) (footnote omitted) ).

Administrative Rule § 13-184-6 substantially adopts the criteria for establishing a geothermal resources subzone set forth by the legislature in HRS § 205-5.2(b) (1985). The following subsection, HRS § 205-5.2(c), states "[m]ethods for assessing the factors in subsection (b) shall be left to the discretion of the board and may be based on currently available public information." Thus, the statutory scheme explicitly contemplates the Board's use of its discretion in determining the appropriate boundaries for designation of the geothermal resource subzone. We hold the statute is sufficiently clear to comport with due process. *Cf. Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 830-31 (lst Cir.) (regulation requiring subdivision plan to be in "best interests of the town" not unconstitutionally vague), *cert. denied* 459 U.S. 989 (1982); *Dillow v. City of Peoria,* 49 Ill. 2d 314, ___, 274 N.E.2d 96, 97-98 (1971) (ordinance with purpose to protect "high ratio of home ownership" not vague); *Maryland-National Capital Park and Planning Commission v. Mayor and Council of Rockville,* 272 Md. 550, 556, 325 A.2d 748, 753-54 (1974) (statute not permitting land use changes "substantially different" not vague).

Appellants also allege the initial assessment done by DOWALD's Manager-Chief Engineer Manabu Tagomori was based on unconstitutionally vague standards. Tagomori testified that the team evaluated the appropriate area based on "personal experience" and "best judgment." The fact that Tagomori's team used these sources in identifying the appropriate area does not invalidate the proposal. This is precisely what the Board was man-

dated to do. HRS § 205-5.2(c). Moreover, the statute and the relevant administrative rules only require use of the guidelines in evaluating *final* approval of the subzone. HRS § 205-5.2; Administrative Rules of the Department of Land and Natural Resources, §§ 13-184-2 through 13-184-9. Designation of the subzone was the subject of extensive hearings by the Board in reviewing the various evidence put before it. There is simply no merit to Appellants' claim that they were denied due process.

Appellants' contention that the Board failed to accept or reject certain proposed findings is also without merit. HRS § 91-12 (1985) does require an agency to rule upon proposed findings, but "a separate ruling on each proposed finding filed by a party is not indispensable." *In re Hawaiian Telephone Co.*, 54 Haw. 663, 668, 513 P.2d 1376, 1379 (1973) (quoting *In re Terminal Transportation, Inc.*, 54 Haw. 134, 139, 504 P.2d 1214, 1217 (1972)). It requires that the parties not be left to guess, with respect to any material questions of fact, or to any group of minor matters that may have cumulative significance, the precise findings of the agency. *Id.*

The Board accepted Appellants' proposed findings of fact 12 and 18, set out in the margin,[11] when it found:

136. . . . Pele is believed to also be present in the sacred area surrounding the Kilauea Volcano in kinolau (alternate body

---

[11] The proposed findings of fact read:

12. Pele is central and indispensable to Native Hawaiian religious beliefs and practices.

.   .   .   .

18. Pele influences and informs the daily physical and spiritual life of Pele practitioners. It is essential to them that Pele not be violated and degraded, and that she be allowed to exist in her unaltered form and in a pristine natural environment.

.   .   .   .

21. Geothermal exploration and development will diminish and finally destroy Pele's creative force. This will cause spiritual, cultural, psychological and sociological injury to the people who worship and respect Pele.

.   .   .   .

25. Violation and desecration of the sacred body of the god Pele, as Pele practitioners believe will occur with geothermal exploration and development, will destroy the relationship and communication which Pele practitioners have with the god Pele.

forms) such as ferns, certain shrubs and trees, and certain volcanic land forms or features, such as significant puʻu (hills).

.   .   .   .

139. . . . There was testimony indicating that Pele is a spiritual concept central to the lives and psychological survival of the believers, and that Pele provides inspiration, strength and a focus for their lives. . . .

Further, the Board rejected findings 21 and 25, also set out in the margin, when it determined that Appellants failed to show sufficient burden on their religious practices.

### B. Case No. 11334

In this appeal, Appellants challenge the Board's findings with respect to the economic feasibility of the development of geothermal energy. Additionally, they argue the Board has failed to apply its regulations with regard to permitted uses for granting a conservation district use permit in a subzone P (Protected) area.

Both of these contentions are without merit. The Board's findings of fact are presumptively correct, and cannot be set aside on appeal unless they are shown to be "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Stop H-3 Ass'n v. State Department of Transportation*, 68 Haw. \_\_\_\_, \_\_\_\_, 706 P.2d 446, 451-52 (1985) (quoting HRS § 91-14ʻ(g) (1976)). There was more than sufficient evidence before the Board to conclude development of 25 MeW of energy would be presently economically feasible and the island's energy needs would likely increase in the future.

With regard to the subzone classification, the Board redesignated the KMERZ area as a geothermal resource subzone as a result of the previous contested case hearings. Hence, there was no requirement that the Board consider subzone P criteria in granting the conservation district use permit to Campbell.

### V.

A claim of constitutional infringement on religious practice requires a burden showing significant harm. Appellants have not

shown a burden of constitutional dimension.

Appellants' other assertions of error are also without merit. The April 9, 1986 Decision approving the geothermal resource subzone and the June 18, 1986 Decision granting the conservation district use permit are affirmed.

*Yuklin Aluli* for Appellants Dedman and Aluli in No. 11126 and for Appellant Aluli in No. 11334.

*Steven C. Moore,* Native American Rights Fund, for Appellant Dedman in No. 11334.

*William H. Tam,* Deputy Attorney General, for Appellees Board of Land and Natural Resources and Susumu Ono.

*Benjamin Matsubara (Stephanie A. Rezents* and *Edsel M. Yamada* with him on the briefs; *Ukishima and Matsubara,* of counsel) for The Estate of James Campbell and The True/Mid-Pacific Geothermal Venture.

On the briefs:

*Allan T. Murakami* and *Melody K. Mackenzie* for Appellant Dedman in No. 11334.

*Patricia K. O'Toole,* Deputy Corporation Counsel, for Appellee County of Hawaii.