100 P.3d 55

**UNIVERSITY OF HAWAI'I,**
Appellant–Appellee

v.

**Nelson B. BEFITEL,[1] Director, Department of Labor and Industrial Relations, Appellee–Appellant,**

and

**Manaiakalani N.K. Kalua, Appellee.**

No. 24270.

Supreme Court of Hawai'i.

June 16, 2004.

Reconsideration Denied Nov. 15, 2004.

Frances E.H. Lum and Robyn M. Kuwabe, Deputy Attorneys General, State of Hawai'i, On the briefs, for appellee-appellant.

Walter S. Kirimitsu, General Counsel, Jan S. Gouveia and Ruth I. Tsujimura, Office of the General Counsel, University of Hawai'i, On the briefs, for appellant-appellee.

---

1. Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c)(1), Nelson B. Befitel, the current Director of the Department of Labor, has been substituted for Lorraine Akiba, the Director at the time this case was decided by the third circuit court.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that, under Hawai'i Revised Statutes (HRS) § 383–7(9)(B) (1993), eligibility of a student-employee for unemployment insurance benefits rests on whether the "primary relationship" the student occupies with respect to the school, college, or university involved is that of student or employee. Under the circumstances of this case, the primary relationship that Appellee Manaiakalani Kalua (Claimant) had to the University of Hawai'i, Hilo Campus (Hilo Campus) while he performed services during the summer, was that of a student of Appellant–Appellee University of Hawai'i (the University). The March 19, 2001 order of the third circuit court (the court)[2] was to that effect, and therefore the said order which reversed the Department of Labor and Industrial Relations (DLIR) Employment Security Appeals Office Decision 0000952 of August 15, 2000, is affirmed.

## I.

The facts in this case are undisputed.[3] Claimant enrolled in the Hilo Campus's Hawaiian Language College in the Fall of 1996. Claimant had been a full-time student[4] at the Hilo Campus for the five consecutive academic years (fall and spring semesters) of 1996–97, 1997–98, 1998–99, 1999–2000, and 2000–01.

On or about January 12, 1998,[5] Claimant signed a University Student Employment Work Agreement (the Student Agreement). The Student Agreement was for a peer counselor position at the Hilo Campus's program called "Na Pua No'eau—Center for Gifted and Talented Native Hawaiian Children" (Na Pua No'eau). The Student Agreement required Claimant to satisfy the following minimum requisites: (1) a Hilo Campus student, currently a sophomore or of higher class standing, (2) 2.0 or better cumulative grade point average, (3) experience working with teenagers, (4) "arts/cultural" skills, (5) "leadership/organizational" skills, (6) valid cardiopulmonary resuscitation/first aid certification, (7) completion of an interview, and (8) "interpersonal" skills. Claimant fulfilled the minimum qualifications and was hired during the summer of 1998.

Claimant worked forty hours per week and did not attend summer school. The work Claimant did was not necessary for Claimant's degree, and he did not receive any credits for his work at Na Pua No'eau. Claimant resumed classes at the Hilo Campus in the fall of 1998.

In December 1999, Claimant filed for unemployment insurance benefits with the DLIR—Unemployment Insurance Division (UID) (collectively the department). In this regard, HRS § 383–2(a) (1993) provides in pertinent part that " 'employment' . . . means service . . . performed for wages or under any contract of hire, written or oral, express or implied." HRS § 383–7(9)(B) states, however, that " '[e]mployment' does not include the following service: . . . Service performed in the employ of a school, college, or university, if the service is performed by a student who is *enrolled* and is regularly attending classes at the school, college, or university." (Emphasis added.)

The department investigated the claim and determined that Claimant had worked for Na Pua No'eau during the summer of 1998, and he "was not enrolled and regularly attending classes at the [Hilo Campus] during the summer session of 1998." The department de-

---

2. The Honorable Riki May Amano presided.

3. Appellant–Appellee University of Hawai'i (the University) states in its answering brief that the facts are undisputed.

4. According to the Hilo Campus's 1999–2000 General Catalog, a full-time undergraduate student is classified as a student who enrolls in twelve (12) or more semester hours. Claimant was registered for thirteen (13) credit hours for the above-mentioned semesters.

5. The record does not indicate the date Claimant signed the Student Agreement, however, the University states in its answering brief that Claimant signed the Student Agreement "[o]n or about January 12, 1998[.]"

Appellee–Appellant Director of the Department of Labor and Industrial Relations (the Director) does not contest the date.

cided that the services performed by Claimant for the employer, the University, were thus not subject to the exclusion stated in HRS § 383–7(9)(B). The wages earned by Claimant, then, could be considered for the purpose of unemployment benefits.

The University filed an appeal of the department's determination, and a hearing was held on June 15, 2000. The appeals officer, in a June 16, 2000 decision, reversed the department's determination and held that Claimant's services were excluded from employment. As a result of this decision, Claimant's services could not be considered for unemployment benefits purposes.

The department filed a written request for reopening of the decision. The department attached to the request a May 22, 1979 letter to the University of Hawai'i Manoa, Director of the Student Employment Office, from the DLIR—UID administrator clarifying HRS § 383–7(9)(B). In the letter, the DLIR had ruled that under HRS § 383–7(9)(B), a "student during part of the summer period, when she was not enrolled or attending classes on a full-time basis, [was] covered and the wages useable to establish a valid claim for benefits." The appeals officer granted the reopening and allowed the parties an opportunity to file written memoranda.

On August 15, 2000, the appeals officer issued her "reopened" decision which reversed her June 16, 2000 decision. The appeals officer explained that

> [t]he Department's argument … that there must nevertheless be some semblance of "enrollment" or "attending classes" is reasonable, such as the continued enrolled status as an ongoing graduate assistant or continued consultations with professors regarding independent work. In the case in hand, no such semblance can be found. *The claimant had completed his spring semester classes and was not expected to return to his academics at the employer's university in any capacity until the fall.*
>
> . . . .
>
> The employer's argument that it is relevant to consider that the work offered to the claimant was in furtherance of his academic pursuits and was conditioned on his student status is also reasonable. The em-

ployer's contention, that as a matter of policy, it may need to re-evaluate its ability to offer student employment if it is not excluded from covered employment under Chapter 383, HRS, was also considered. These considerations, however, must be weighed against the statutory requirements contained in Section 383–7(9)(B), HRS. *Based on a finding that the claimant was not enrolled in or attending classes while performing his services for the employer, the claimant's services are not excluded from the term "employment" under Section 383–7, HRS.*

(Emphases added.) Subsequently, the University filed for a reopening of the August 15, 2000 decision, which was denied.

On October 18, 2000, the University appealed to the court. In a March 19, 2001 order, the court reversed the appeals officer's decision and ruled that Claimant's services were excluded under HRS § 383–7(9)(B). In the order, the court stated that the purpose of HRS § 383–7(9)(B) was to "exclude, from covered employment, services of persons who are essentially student [sic] rather than workers." Additionally, the court applied the "primary relationship test" which "encourages arbiters to look at the student's primary relationship to the university to determine whether a student-claimant is disqualified form benefits[.]" The court thereby concluded that

> Claimant was essentially a student who worked full-time in the summer of 1998 for UH Hilo's student employment program instead of school; the primary relation of Claimant to UH Hilo was that of a student and not a worker. As such, the exception set forth in HRS § 383–7(9)(B) applies in this case and Claimant is not entitled to unemployment benefits for services performed for UH Hilo in the summer of 1998. Decision 0000952 is reversed.

The final judgment was filed on April 19, 2001. The Director timely filed the May 15, 2001 notice of appeal to this court.

## II.

On appeal, the Director argues that the court (1) erroneously interpreted the purpose of HRS 383–7(9)(B); (2) erroneously relied on *Bachrach v. Dep't of Indus. Labor & Human Relations,* 114 Wis.2d 131, 336

N.W.2d 698 (Wis.Ct.App.1983), for the proposition that a primary relationship test could be used to exclude the services of a student who was not enrolled and not regularly attending classes; (3) erroneously relied on *Pima Cmty. Coll. v. Arizona Dep't of Econ. Sec.*, 148 Ariz. 302, 714 P.2d 472 (Ariz.Ct. App.1986), for the proposition that a primary relationship test could be used to exclude the services of a student who was not enrolled and not regularly attending classes; and (4) erroneously construed HRS § 383-7(9)(B) too broadly.

The University does not address the Director's points directly but, rather, argues in its answering brief that (1) the express language and the purpose of HRS § 383-7(9)(B) support the conclusion that Claimant's services are exempt, (2) the primary relationship test is applicable because (a) the primary relationship test is founded in the federal counterpart of HRS § 383-7(9)(B) and (b) the reasoning in *Bachrach* and *Pima Cmty Coll.* is sound, and (3) the conclusion that Claimant is not entitled to unemployment benefits is supported by an attorney general letter.

### III.

First, we observe that a determination "by a representative of the department of labor and industrial relations[,]" HRS § 383-33 (1993),[6] may be appealed to the DLIR in the county in which the claimant resides by "[t]he claimant or any other party entitled to notice of a determination or redetermination[,]" HRS § 383-38 (Supp.2003).[7] Following a determination by an appeals officer of the DLIR, the Director "or any party to the proceedings before the referee may obtain judicial review of the decision of the referee in the manner provided in chapter 91, by instituting proceedings in the circuit court[.]" HRS § 383-41 (1993). HRS § 91-14(a) (1993) authorizes judicial review of "a final decision and order in a contested case." This court reviews agency decisions to determine if "substantial rights of the petitioner may have been prejudiced[.]" HRS § 91-14(g) (1993).[8]

### IV.

■ Whereas the court interpreted HRS § 383-7(9)(B), certain established principles apply on appeal. "The interpretation of a statute is a question of law reviewable *de novo.*" *Franks v. City & County of Honolulu*, 74 Haw. 328, 334, 843 P.2d 668, 671 (1993). When construing a statute, this court's "foremost obligation 'is to ascertain and give effect to the intention of the legislature' which 'is to be obtained primarily from the language contained in the statute itself.'" *Id.* (quoting *In re Hawaiian Telephone Co.*, 61 Haw. 572, 577, 608 P.2d 383, 387 (1980)). However, "[w]hen there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute an ambiguity exists." *Allstate Ins. Co. v. Schmidt*, 104 Hawai'i 261, 265, 88 P.3d 196, 200 (2004) (quoting *Franks*, 74 Haw. at 335, 843 P.2d at 671). "If language of the statute is ambiguous, courts look to legislative history for assistance in construing the statute." *Id.* (quoting *Franks*, 74 at 335, 843 P.2d at 671-72).

### V.

■ The Hawai'i Employment Security Law, HRS chapter 383, "provides a measure

---

**6.** HRS § 383-33 states in relevant part that "[a] determination upon a claim filed pursuant to section 383-32 [ (filing of a claim) ] shall be made promptly by a representative of the department of labor and industrial relations authorized to make determinations upon claims[.]"

**7.** HRS § 383-38 states in relevant part:

(a) The claimant or any other party entitled to notice of a determination or redetermination as herein provided may file an appeal from the determination or redetermination at the office of the department in the county in which the claimant resides or in the county in which the claimant was last employed ...

within ten days after the date of mailing of the notice to the claimant's or party's last known address[.]

**8.** HRS § 91-14(g) provides that the court must determine if the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial unwarranted exercise of discretion.

of protection against wage loss resulting from temporary unemployment for Hawaii's workers. Benefits paid to unemployed members of the work force are drawn from a trust fund financed by contributions from employers subject to the law." *Koolau Baptist Church v. Dep't of Labor & Indus. Relations,* 68 Haw. 410, 412, 718 P.2d 267, 268 (1986). "Every employer in the state for whom service is performed by an employee is obliged to make contributions to the unemployment compensation fund, unless the service is expressly excluded from coverage under the law." *Id.* at 412, 718 P.2d at 268–69.

■ Claimant would be eligible for unemployment insurance benefits if the services he provided Na Pua No'eau did not fall within the exclusion set forth in HRS § 383–7(9)(B). Because the term "enrolled" in HRS § 383–7(9)(B) could mean a student is registered to take classes currently or during the following semester, the term "enrolled" is ambiguous.[9] In light of this ambiguity, legislative history indicates that when amending HRS chapter 383 in 1971, the legislature expressed an intent that the chapter "[c]onform[ ] with federal standards [which] is required as a condition for allowance of credit for contributions ... under the Federal Unemployment Tax Act [ (FUTA) ]." Sen. Stand. Comm. Rep. No. 429, in 1971 Senate Journal, at 977–78. Because of this intent, the fact that the language of HRS § 383–7(9)(B) is identical to the FUTA and the Federal Insurance Contributions Act (FICA), and the silence of Hawai'i case law as to the interpretation of the statute, this court may consider federal case law. *See Gold v. Harrison,* 88 Hawai'i 94, 104, 962 P.2d 353, 363 (1998). In *Gold,* when interpreting the Hawai'i Rules of Civil Procedure, this court held that "[i]n instances where Hawai'i case law and statutes are silent, this court can look to parallel federal law for guidance." *Id.* (internal quotation marks and citation omitted).

The FUTA provides that "[f]or purposes of this chapter, the term 'employment' means any service performed prior to 1955 ... except ... service performed in the employ of a school, college, or university, if such service is performed (i) by a student who *is enrolled and is regularly attending classes at such school, college, or university* [.]" 26 U.S.C. § 3306(c)(10)(B)(i) (emphasis added). The Code of Federal Regulations (Federal Regulations) assists in the interpretation and implementation of this part of the FUTA and provides in relevant part that

> [t]he status of the employee as a student performing the services shall be determined on the basis of the relationship of such employee with the organization for which the services are performed. An employee who performs services in the employ of a school, college, or university as an incident to and for the purpose of pursuing a course of study at such school, college, or university has the status of a student in the performance of such services.

26 C.F.R. § 31.3306(c)(10)(a)(c)(2).

The FICA also provides that the term employment "shall not include ... service performed in the employ of ... a school, college, or university ... [i]f such service is performed by a student who *is enrolled and regularly attending classes* at such school, college, or university[.]" 26 U.S.C. § 3121(b)(10)(A) (emphasis added). The Federal Regulations pertaining to the FICA also interpret this language to mean:

> The status of the employee as a student performing the services shall be determined on the basis of the relationship of such employee with the organization for which the services are performed. An employee who performs services in the employ of a school, college, or university, as an incident to and for the purpose of pursuing a course of study at such school, college, or university has the status of a student in the performance of such services.

26 C.F.R. § 31.3121(b)(10)–2(c).

■ Consequently, the status of a student pursuant to the FUTA and the FICA is

---

9. Although the attorney for the University stipulated that Claimant was "not enrolled in classes in that summer of 1998[,]" this stipulation pertained to the fact that Claimant was not registered for classes during the summer and not as to the meaning of "enrolled" in HRS § 383–7(9)(B).

determined by examining the student/employee's "primary relationship" to the school, college, or university. *See Bachrach,* 336 N.W.2d at 701; *Pima Cmty. Coll.,* 714 P.2d at 475. In obtaining the job with Na Pua No'eau, Claimant was required to be "a University of Hawai'i at Hilo student, currently a sophomore or of higher class standing[.]" But for Claimant's status as a student at the Hilo Campus, he would not have been eligible for the position. Therefore, Claimant performed services as an incident to his course of study at the Hilo Campus. Although Claimant was not actually registered for and physically attending classes during the summer of 1998, his primary relationship, which qualified him for a job with the Hilo Campus, was that of a student of the institution. Thus, the 1998 summer position was excluded from the term "employment" pursuant to HRS § 383-7(9)(B).

### VI.

For the foregoing reasons, the court's March 19, 2001 order reversing the DLIR Employment Security Appeals Office Decision 0000952 is affirmed.